# United States Court of Appeals for the Federal Circuit

---

**FLOORPRO, INC.,**
*Plaintiff-Appellee,*

**v.**

**UNITED STATES,**
*Defendant-Appellant.*

---

2011-5116

---

Appeals from the United States Court of Federal Claims in case no. 09-CV-651, Senior Judge Loren A. Smith.

---

Decided: May 31, 2012

---

JAMES S. DELSORDO, Argus Legal, LLC, of Manassas, Virginia, argued for plaintiff-appellee.

DOMENIQUE KIRCHNER, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for defendant-appellant. With her on the brief were TONY WEST, Assistant Attorney General, JEANNE E. DAVIDSON, Director, and BRYANT G. SNEE, Deputy Director. Of counsel on the brief was PAMELA J. NESTELL, Senior Trial Attorney, Naval Litigation Office, Office of the General

Counsel, United States Department of the Navy, of Washington, DC.

_____

Before PROST, MAYER, and WALLACH, *Circuit Judges.*

MAYER, *Circuit Judge.*

The United States appeals a judgment of the United States Court of Federal Claims awarding FloorPro, Inc. ("FloorPro") damages for breach of a government contract. *See FloorPro, Inc. v. United States*, 98 Fed. Cl. 144 (Fed. Cl. 2011) ("*Federal Claims Decision II*"); *FloorPro, Inc. v. United States*, 94 Fed. Cl. 775 (Fed. Cl. 2010) ("*Federal Claims Decision I*"). Because FloorPro's suit was filed outside of the six-year limitations period set out in 28 U.S.C. § 2501, its claim is time-barred. We therefore vacate and remand with instructions to dismiss for lack of jurisdiction.

## BACKGROUND

On February 6, 2002, the United States Navy awarded Contract No. N62467-02-M-2013 to G.M. & W. Construction Corporation ("GM&W") for the installation of floor coating in several warehouse bays at a military base. GM&W subsequently entered into a subcontracting agreement with FloorPro, pursuant to which FloorPro agreed to perform the floor-coating work for a sum of $37,500.00. FloorPro completed the work on February 27, 2002, and promptly submitted an invoice to GM&W.

On March 8, 2002, the Navy informed GM&W that the floor-coating work had been completed satisfactorily. On April 17, 2002, FloorPro contacted the Navy's contracting officer, stating that it had not been paid by GM&W. The contracting officer then contacted GM&W to inquire why FloorPro had not been paid for the floor-

coating work.  GM&W informed the contracting officer that there were several claims pending against it, and that it was not sure whether any funds that the Navy directly deposited into its bank account would be available to pay FloorPro.  Accordingly, on April 22, 2002, the Navy and GM&W entered into a contract modification ("Modification P00001"), which provided that the Defense Finance and Accounting Service ("DFAS") would not pay GM&W directly, as required by the original contract, but would instead pay for the floor-coating work by issuing a hard-copy, two-party check payable to GM&W and Floor-Pro.  Modification P00001 further provided that the Navy would mail the check directly to FloorPro.

Notwithstanding Modification P00001, on July 17, 2002, the DFAS paid GM&W directly by an electronic fund transfer to its bank account.  On July 18, 2002, the contracting officer informed FloorPro that DFAS had "ignored" Modification P00001 and "did not issue the two-party check as [Modification P00001] had directed." FloorPro responded by sending a letter, dated July 23, 2002, asking the contracting officer "[w]hat exactly is being done by [the Navy] to process a payment to us for our work?"   On August 9, 2002, Captain B.M. Scott, a Navy acting commander, sent FloorPro a letter confirming that the government had paid GM&W in full on the contract.  Scott asserted that "[a]s the Government does not possess privity of contract with FloorPro, Inc., or any other subcontractor," payment to GM&W had "fulfill[ed] the extent of the Government's obligations" under the contract.  Scott informed FloorPro that its only recourse was to seek payment "from GM&W through the civil court system."  Scott stated, moreover, that GM&W's failure to pay FloorPro "ha[d] been referred to the Naval Criminal Investigative Service for investigation."

On December 5, 2002, FloorPro submitted a claim to the Navy's contracting officer, asserting that the Navy had failed to pay it for the floor-coating work it had performed. Two weeks later, the contracting officer wrote FloorPro a letter stating that she could not issue a final decision on its claim because the government did "not have a contract with FloorPro."

On March 27, 2003, FloorPro filed an action against the Navy at the Armed Services Board of Contract Appeals ("ASBCA"). Relying upon this court's decision in *D & H Distributing Co. v. United States*, 102 F.3d 542, 546-48 (Fed. Cir. 1996), the ASBCA determined that it had jurisdiction over FloorPro's claim because FloorPro was a third-party beneficiary of the contract between the Navy and GM&W. *See In re FloorPro, Inc.*, No. 54143, 2007 ASBCA LEXIS 38, at *31-36 (June 27, 2007). It determined, moreover, that FloorPro was entitled to damages of $37,500, plus interest, for the government's breach of Modification P00001. *Id.* at *36.

On appeal, this court reversed. *See Winter v. FloorPro, Inc.*, 570 F.3d 1367 (Fed. Cir. 2009). We held that under the Contract Disputes Act of 1978 ("CDA"), 41 U.S.C. §§ 7101-7109, the ASBCA has no jurisdiction over a claim brought by a subcontractor who is a third-party beneficiary of a contract between the government and the prime contractor. *Winter*, 570 F.3d at 1371-73. We explained that the CDA applies only to "contractors," and parties—such as subcontractors—who are not in privity of contract with the government generally have no right to "avail themselves of the CDA's appeal provisions." *Id.* at 1370-71 (citations and internal quotation marks omitted). We observed, however, that the grant of jurisdiction to the Court of Federal Claims under the Tucker Act, 28 U.S.C. § 1491(a)(1), "is broader" than the jurisdiction of the ASBCA under the CDA, and can potentially extend to

an intended third-party beneficiary of a government contract. *Winter*, 570 F.3d at 1372; *see D & H Distrib.*, 102 F.3d at 546-48 (concluding that a third-party beneficiary of a government contract had the right to enforce a contract provision in the Court of Federal Claims).

On October 2, 2009, FloorPro filed suit against the government in the Court of Federal Claims. The government moved for summary judgment, arguing that Floor-Pro's claim was time-barred because it was filed more than six years after it first accrued. In response, FloorPro argued that its claim did not accrue until October 5, 2004, "at which time the Navy filed a brief at the [ASBCA] contending that FloorPro had no enforceable rights under [Modification P00001]." *Federal Claims Decision I*, 94 Fed. Cl. at 778. FloorPro asserted "that until October 5, 2004, the Government had not refused to enforce the Modification, and not until the Government's brief was filed did the Navy assert that the Modification would not be honored." *Id.*

The Court of Federal Claims agreed with FloorPro that "the facts and the law" supported an October 5, 2004 accrual date for its claim. *Id.* The court determined, however, that it should not resolve the timeliness question "solely base[d] . . . on which date [was] proper to start the running of the statute of limitations." *Id.* Because FloorPro "did not sleep on its rights," but instead had diligently pursued its claim by filing suit at the ASBCA, the court concluded that barring FloorPro's claim as untimely would "lead to an unjust result." *Id.* at 779. The court determined, moreover, that FloorPro was an intended third-party beneficiary of Modification P00001 and that it was entitled to damages of $37,500 for the government's breach of that provision. *See Federal Claims Decision II*, 98 Fed. Cl. at 147-48. The government then filed a timely appeal with this court.

DISCUSSION

"Whether the Court of Federal Claims possesses jurisdiction over a claim is a question of law subject to *de novo* review." *Navajo Nation v. United States*, 631 F.3d 1268, 1272 (Fed. Cir. 2011). Every civil action against the United States is barred unless the complaint is filed within six years of the time a right of action first accrues. 28 U.S.C. § 2501. This six-year limitations period is jurisdictional and may not be waived or tolled. *John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 136-39 (2008); *see Young v. United States*, 529 F.3d 1380, 1384 (Fed. Cir. 2008) ("[T]he statute of limitations applicable to Tucker Act claims . . . is jurisdictional and not susceptible to equitable tolling."); *Martinez v. United States*, 333 F.3d 1295, 1316 (Fed. Cir. 2003) (en banc) ("It is well established that statutes of limitations for causes of action against the United States, being conditions on the waiver of sovereign immunity, are jurisdictional in nature."); *Hopland Band of Pomo Indians v. United States*, 855 F.2d 1573, 1576-77 (Fed. Cir. 1988) ("The 6-year statute of limitations on actions against the United States is a jurisdictional requirement attached by Congress as a condition of the government's waiver of sovereign immunity and, as such, must be strictly construed.").

Because FloorPro's claim was filed more than six years after it accrued, the Court of Federal Claims was without jurisdiction to consider it. In general, a cause of action against the government accrues "when all the events have occurred which fix the liability of the Government and entitle the claimant to institute an action." *Goodrich v. United States*, 434 F.3d 1329, 1333 (Fed. Cir. 2006) (citations and internal quotation marks omitted). The issue of "whether the pertinent events have occurred is determined under an objective standard; a plaintiff does not have to possess actual knowledge of all the

relevant facts in order for the cause of action to accrue." *Fallini v. United States*, 56 F.3d 1378, 1380 (Fed. Cir. 1995).

FloorPro's cause of action accrued when the government breached Modification P00001 by making payment directly to GM&W, rather than sending a two-party check to FloorPro as the modification required. *See Franconia Assocs. v. United States*, 536 U.S. 129, 141 (2002) (explaining that claims seeking damages for breach of contract generally accrue at the time of the breach); *Kinsey v. United States*, 852 F.2d 556, 557 (Fed. Cir. 1988) (emphasizing that a cause of action for breach of a government contract generally accrues when payment is due but wrongfully withheld). FloorPro became aware of the breach no later than August 9, 2002, when the Navy informed FloorPro that: (1) it had paid GM&W directly for the floor-coating work; (2) it believed that it had fulfilled the extent of its contract obligations; and (3) FloorPro's only recourse was to seek payment "from GM&W through the civil court system." Thus, no later than August 2002, FloorPro knew not only that the Navy had paid GM&W directly, but that the government believed that it had fulfilled all of its obligations under the contract and would not make any payment to FloorPro. At this point, FloorPro had "a complete and present cause of action," *Bay Area Laundry & Dry Cleaning Pension Trust Fund v. Ferbar Corp.*, 522 U.S. 192, 201 (1997) (citations and internal quotation marks omitted), and all events necessary to fix the alleged liability of the government for the failure to comply with Modification P00001 had occurred. Because FloorPro did not file its complaint in the Court of Federal Claims until October 2, 2009, more than six years after its claim accrued, its action is time-barred.

FloorPro argues that its cause of action did not accrue until October 5, 2004, when the government filed its brief

in the ASBCA proceedings. It asserts that while it "knew that the Government had paid GM&W directly in violation of Modification P00001, the Government did not repudiate the terms of the modification" until the government filed its brief with the ASBCA. We do not find this reasoning persuasive. FloorPro knew long before the government filed its brief in the ASBCA proceedings that the government had "repudiate[d]" Modification P00001. As noted above, the Navy's August 2002 letter stated that it had fulfilled all of its obligations under the contract by making payment directly to GM&W and that FloorPro's only recourse was to seek payment "from GM&W through the civil court system." This letter was an unequivocal refusal to pay FloorPro under the terms of Modification P00001, which required the Navy to issue a hard-copy, two-party check payable to both GM&W and FloorPro and to send the check to FloorPro. Indeed, the complaint FloorPro filed with the ASBCA in April 2003 specifically alleged that the Navy had breached Modification P00001 by making payment directly to GM&W. We reject, therefore, FloorPro's assertion that it was unaware that the Navy had repudiated Modification P00001 until the government filed its October 5, 2004 brief with the ASBCA.

We likewise reject FloorPro's contention that equitable tolling can be applied to defer the running of the limitations period. FloorPro argues that its claim should be deemed timely because it diligently pursued its claim and acted reasonably in initially filing suit at the ASBCA, rather than in the Court of Federal Claims. It asserts, moreover, that nothing in the Supreme Court's decision in *Sand & Gravel* "specifically bars the application of equitable tolling." We disagree. *Sand & Gravel* makes clear that section 2501 sets forth an "absolute" time limit for filing suit in the Court of Federal Claims. 552 U.S. at

135; *see Young*, 529 F.3d at 1384. Because section 2501's time limit is jurisdictional, the six-year limitations period cannot be extended even in cases where such an extension might be justified on equitable grounds.

CONCLUSION

Accordingly, the judgment of the United States Court of Federal Claims is vacated and the case is remanded with instructions to dismiss for lack of jurisdiction.

COSTS

No costs.

**VACATED AND REMANDED**