NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**CHERYL HIGGINS,**
*Plaintiff-Appellant,*

**v.**

**UNITED STATES,**
*Defendant-Appellee.*

---

2014-5025

---

Appeal from the United States Court of Federal Claims in No. 1:12-cv-00922-EJD, Judge Edward J. Damich.

---

Decided: October 14, 2014

---

CHERYL HIGGINS, of Bowie, Maryland, *pro se.*

DOUGLAS T. HOFFMAN, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for defendant-appellee. With him on the brief were STUART F. DELERY, Assistant Attorney General, ROBERT E. KIRSCHMAN, JR., Director, and MARTIN F. HOCKEY, JR., Assistant Director.

---

Before LOURIE, PLAGER, and WALLACH, *Circuit Judges.*

PER CURIAM.

Cheryl Higgins ("Higgins") appeals from the decision of the United States Court of Federal Claims (the "Claims Court") dismissing two of her claims as beyond the six-year statute of limitations and granting summary judgment in favor of the government on the third and remaining claim. *See Higgins v. United States*, No. 12-922C (Fed. Cl. Oct. 9, 2013) ("*Opinion*"). Because the Claims Court did not err in holding that it lacked jurisdiction over Higgins' first two claims and in granting summary judgment on the third claim, we *affirm*.

## BACKGROUND

The United States Department of Labor ("DOL") awarded a grant in September 1999 to Devereaux Corporation ("Devereaux"), of which Higgins was the executive director. *Id.* at 2. The grant was for about $3 million, to be paid over a period of three years. *Id.* Months later, a DOL grant officer submitted a proposal to terminate the grant for "material failure to comply with the terms and conditions of a grant award" under 29 C.F.R. § 95.61(a)(1). *Id.* After considering Devereaux's response, DOL issued a Final Determination to terminate the grant. *Id.*

Devereaux submitted to the DOL Office of Administrative Law Judges ("ALJ Office") a request for a hearing to review the Final Determination. *Id.* at 3. The ALJ Office issued a prehearing order requesting information from both parties. *Id.* Devereaux failed to comply, despite a show cause order, and the ALJ Office entered a default judgment in May 2001. *Id.*

After negotiations with Higgins, DOL prepared a Modification of the grant award to effectuate the termination by reducing the award amount and changing the expiration date to September 2000. *Id.* On October 24, 2001, Higgins and DOL signed the Modification, which

was effective at execution, and the remainder of the negotiated amount was paid to Devereaux. Appellee's App. 28, 38, 42. In May 2002, DOL officially closed the grant based on that settlement and payment. *Id.* at 42.

DOL subsequently sent closeout documents to Devereaux, but they were returned in the mail as undeliverable. *Opinion* at 3. After being notified that the corporation was defunct, DOL executed a unilateral closeout on May 12, 2004, adopting the terms of the Modification. DOL then sent a preliminary settlement notice to Higgins on May 26, 2004 ("Settlement Notice"). *Id.* The Settlement Notice contained a paragraph that described certain situations in which further payment adjustments might be made for an amended settlement, including "[u]nresolved disputes or claims identified on the Grantee's Release." *Id.*

In November 2005, Higgins sent a letter requesting over $1.5 million from the grant for reimbursement of various outstanding claims incurred by Devereaux. *Opinion* at 3. In February 2006, DOL responded with a letter stating that the grant had been closed out and no further funds were owed to Devereaux. Appellee's App. 36–38. That letter noted the various documents and events concerning the grant termination and closure, including the Final Determination, the ALJ Office's default judgment, and the Modification signed by both parties in October 2001. Moreover, the letter elaborated that the legislative authorization for the grant program had lapsed and that no additional funding was available. DOL and Higgins later had an in-person meeting and further written correspondence, in which DOL reiterated that the grant had been terminated, the Modification signed by Higgins reflected a negotiated settlement, the grant had been officially closed based on that settlement and payment of agreed costs, and no additional funds were available. *Opinion* at 3; Appellee's App. 42.

In October 2008, in response to another inquiry from Higgins, DOL sent a letter stating that the grant was terminated in accordance with 29 C.F.R. § 95.61(a)(2). *Opinion* at 3.

On December 28, 2012, Higgins filed suit against the government in the Claims Court alleging a breach of contract or, alternatively, entitlement to an amended settlement according to the Settlement Notice or a final settlement under § 95.61(a)(2). The court found that the breach of contract claim accrued on May 12, 2004, when DOL unilaterally closed out the grant. *Id.* at 4. Similarly, the court found that the amended-settlement claim accrued on May 26, 2004, when DOL sent the Settlement Notice. *Id.* at 6. The court also found that the termination occurred under § 95.61(a)(1) instead of § 95.61(a)(2). *Id.* at 5–6. The court thus dismissed the breach of contract claim and the amended-settlement claim as beyond the six-year statute of limitations, and granted summary judgment in favor of the government on the final-settlement claim as arising under an inapplicable statutory provision. *Id.* at 7.

Higgins appealed to this court. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(3).

DISCUSSION

We review the Claims Court's dismissal for lack of jurisdiction *de novo*. *FloorPro, Inc. v. United States*, 680 F.3d 1377, 1380 (Fed. Cir. 2012). We also review the grant of summary judgment *de novo*. *Holland v. United States*, 621 F.3d 1366, 1374 (Fed. Cir. 2010).

I. Claims Dismissed for Lack of Jurisdiction

A claim against the government must be filed within six years after the claim first accrues. 28 U.S.C. § 2501; *Martinez v. United States*, 333 F.3d 1295, 1304 (Fed. Cir. 2003) (en banc). A claim accrues for purposes of the statute of limitations "when all the events have occurred

which fix the liability of the Government and entitle the claimant to institute an action." *FloorPro*, 680 F.3d at 1381 (citation omitted). "The question of whether the pertinent events have occurred is determined under an objective standard; a plaintiff does not have to possess actual knowledge of all the relevant facts in order for the cause of action to accrue." *Fallini v. United States*, 56 F.3d 1378, 1380 (Fed. Cir. 1995). The six-year statute of limitations is "jurisdictional" and thus is not subject to equitable tolling. *John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 134–39 (2008).

## A. The Breach of Contract Claim

Higgins argues that her breach of contract claim did not accrue until 2012, when "a certain federal official" revealed to her that the grant termination "was not a true termination," or until 2013, when she learned about the undelivered closeout documents. Appellant's Br. 4–5. She also asserts that equitable tolling should apply because she has pursued several remedies in good faith.

The government responds that the events in 2012 and 2013 are irrelevant to a determination whether Higgins had filed her complaint within the statute of limitations period. The government asserts that "all events required to assert a claim for unpaid, but due and owing grant money" had occurred when the Modification was signed in 2001. Appellee's Br. 9. The government contends that even if Higgins' reimbursement request in November 2005 were considered an event necessary to assert the claim, the February 2006 letter rejecting the request would be the latest event to start the clock, which still puts the claim beyond the six-year period. The government argues that Higgins' pursuit of other remedies does not affect when the events *necessary* to assert the claim all occurred.

We agree with the government that the Claims Court lacked jurisdiction over the breach of contract claim

because the claim first accrued more than six years before Higgins filed her complaint.

The breach of contract claim arises from the grant award from DOL to Devereaux. The Claims Court found that May 12, 2004, the date when DOL executed the unilateral closeout, was the "latest date upon which a contractual claim could conceivably be seen to arise." *Opinion* at 4. Higgins fails to identify a date subsequent to that date that would have given rise to a breach of contract claim, considering the contract in question had been terminated, amended to expire, officially closed, and then finally processed for closeout. Because the six-year statute of limitations is jurisdictional, equitable tolling exceptions do not apply. We therefore hold that the Claims Court did not err in finding that May 12, 2004, was objectively the latest possible date that the breach of contract claim first accrued.

## B. The Amended-Settlement Claim

Higgins argues that because a grantee's release was never executed, she was unable to formally communicate the disputed claim. She asserts that she thus is entitled to an amended settlement. The government responds that regardless whether a grantee's release was executed, the amended-settlement claim accrued on May 26, 2004, because the claim arose from the Settlement Notice.

We agree with the government that the Claims Court also lacked jurisdiction over the amended-settlement claim because that claim first accrued more than six years before Higgins filed her complaint.

The amended-settlement claim stems from the Settlement Notice dated May 26, 2004. The only contingency that Higgins claims to apply in her case is for "[u]nresolved disputes or claims identified on the Grantee's Release." Appellant's Br. 9–10; *Opinion* at 6. While Higgins repeatedly insists that every grantee is entitled

to a release, she has provided no statutory or regulatory basis for that entitlement. Regardless whether a release would have been procedurally proper for a closeout, Higgins was on notice of that contingency through the Settlement Notice and she knew that she did not possess a grantee's release. We therefore hold that the Claims Court did not err in finding that the amended-settlement claim first accrued on May 26, 2004.

For the Claims Court to have jurisdiction, Higgins' claims must have first accrued by December 28, 2006: six years before she filed her complaint. *Martinez*, 333 F.3d at 1304. To challenge the grant termination or the availability of an amended settlement, Higgins should have filed suit before the statute of limitations expired. Because we agree with the Claims Court's findings that the clock began running no later than May 2004 for both the breach of contract and amended-settlement claims, we hold that the Claims Court did not err in dismissing those claims for lack of jurisdiction.

## II. The Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." RCFC 56(a). In determining whether there are genuine issues of material fact, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Higgins argues that she is entitled to a final settlement because DOL converted the unilateral termination under § 95.61(a)(1) to a mutual termination under § 95.61(a)(2), as evidenced by the October 2008 letter. The government responds that the Claims Court explicitly considered the October 2008 letter when finding no genuine issue of material fact because the letter did not change the original basis for the termination. The government

also argues that the Claims Court found that both the Final Determination and the ALJ Office's default judgment specifically referenced § 95.61(a)(1).

We agree with the government that the October 2008 letter did not change the original basis for the termination of the grant. The documents contemporaneous with the termination refer specifically to § 95.61(a)(1). The October 2008 letter was sent more than seven years after the grant was terminated. It does not state that DOL *converted* the termination, much less imply that a final settlement was to follow. While the two letters that Higgins submitted in support of such an interpretation do in fact reference conversations with DOL about changing the basis for the termination to "for convenience" instead of "from default" (*i.e.*, under § 95.61(a)(2) instead of § 95.61(a)(1)), neither of those letters refers to her claim for a final settlement. *See* Reply App. A. Instead, she stated that a DOL letter reflecting the change "will greatly assist [her] in responding to future RFP's." *Id.* The justifiable inference is, at best, that the October 2008 letter *nominally* changed the termination to one under § 95.61(a)(2) such that Higgins could more easily submit future grant proposals. Even believing Higgins' evidence, that letter does not change the original basis for the grant termination, and Higgins thus is not entitled to a final settlement. We therefore agree with the Claims Court's holding that the government was entitled to summary judgment on the final-settlement claim.

CONCLUSION

We have considered Higgins' remaining arguments and conclude that they are without merit. For the foregoing reasons, the decision of the Claims Court is affirmed.

**AFFIRMED**