NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**JOHN MURRAY, SPOUT SPRINGS MOUNTAIN RESORT,**
*Plaintiffs-Appellants*

**NANCY MURRAY,**
*Plaintiff*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2023-2287

---

Appeal from the United States Court of Federal Claims in No. 1:21-cv-01492-EGB, Senior Judge Eric G. Bruggink.

---

Decided: July 18, 2025

---

KEVIN GARDEN, The Garden Law Firm PC, Alexandria, VA, argued for plaintiffs-appellants.

AN HOANG, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellee. Also represented by

BRIAN M. BOYNTON, PATRICIA M. MCCARTHY, FRANKLIN E. WHITE, JR.

―――――――――――

Before REYNA, CUNNINGHAM, and STARK, *Circuit Judges*.

CUNNINGHAM, *Circuit Judge*.

Spout Springs Mountain Resort ("Spout Springs") and John Murray appeal from a decision of the United States Court of Federal Claims granting the government's motion to dismiss their complaint for lack of jurisdiction. *Murray v. United States*, 165 Fed. Cl. 729 (2023) ("*Decision*"). The Court of Federal Claims held that Plaintiffs' complaint was time-barred by the applicable six-year statute of limitations. For the reasons explained below, we *affirm*.

## I. BACKGROUND

Spout Springs is a ski resort located on federal land in Oregon. *Id.* at 731; App'x 21.[1] John and Nancy Murray paid for improvements to Spout Springs in 1999. *Decision* at 731; App'x 22. On December 31, 1999, the United States Forest Service ("Forest Service") issued the Murrays a Ski Area Term Special User Permit (the "Permit") authorizing them to use the land to operate a ski area. *Decision* at 731; App'x 21–22; *see* App'x 53–65. The Permit granted the Murrays a nonexclusive right to use the area and gave the Forest Service the right to permit others to use "any part of the permitted area for any purpose, provided such use does not materially interfere with the rights and privileges hereby authorized." App'x 54; *Decision* at 732. The Permit also required the Murrays to use the Spout Springs ski area at least 90 days each year. *Decision* at 732; App'x 55.

―――――――――――

[1] We refer to the appendix filed at ECF No. 25 as "App'x" throughout this opinion.

In 2004, the Forest Service asked the Murrays if Spout Springs would agree to allow certain snowmobile-related activity in the ski area parking lot. *Decision* at 732; App'x 23. "The Murrays agreed to the Forest Service's request to allow snowmobile-related activities 'subject to the caveat that if such activity became unacceptable . . . the activity would again be prohibited.'" *Decision* at 732 (quoting App'x 24).

Appellants contend that snowmobilers began to affect the operation of Spout Springs. *Id.*; App'x 24. According to Appellants, the snowmobilers would operate at high speeds, nearly collide with children, drink alcohol, and otherwise cause problems. *Decision* at 733; App'x 24. In July 2010, Mr. Murray informed the Forest Service that he intended to prohibit snowmobile trailers and recreational vehicles from the Spout Springs parking lot beginning in the 2010–2011 season. *Decision* at 733; App'x 95. The Forest Service responded to Mr. Murray that his actions were inconsistent with equal access requirements and informed him that he needed to remove the "Resort Parking Only-No Trailers" signs that he had installed. *Decision* at 733; App'x 96; *see* App'x 355–56.

Mr. Murray testified that the snowmobiler problem "wasn't really severe" and was "manageable" at first but became "worse and worse" over time, until it grew out of control. App'x 135, 286, 292; *see id.* at 286–94; *Decision* at 733–34. In 2016, when the Murrays' insurance agent expressed serious concerns about liability, he again asked the Forest Service for permission to ban snowmobiling in the Spout Springs parking lot. *Decision* at 734; App'x 25. When the Forest Service refused, Mr. Murray closed Spout Springs beginning in the 2016–2017 season. *Decision* at 734; App'x 118. The Forest Service repeatedly attempted to persuade Mr. Murray to reopen Spout Springs. *See, e.g.*, App'x 99, 103–107. In 2021 and after failure to reach an agreement, the Forest Service revoked the Permit. *Decision* at 734; App'x 28.

The Murrays and Spout Springs sued in the Court of Federal Claims on June 21, 2021, seeking monetary damages and alleging that the Forest Service breached the contract, here the Permit, by permitting snowmobile related activity in the Spout Springs parking lot that materially interfered with Plaintiffs' operations. *Decision* at 735; App'x 19–30. The Forest Service moved to dismiss the complaint for lack of subject matter jurisdiction under Court of Federal Claims Rule ("RCFC") 12(b)(1), alleging that the statute of limitations had run, or alternatively for summary judgment (the latter request being based solely on the different ground that the Murrays had caused their own injuries). *Decision* at 731; App'x 31–50. The Court of Federal Claims granted the motion to dismiss for lack of subject matter jurisdiction, finding that Plaintiffs' claim was untimely and not reaching the alternative request for summary judgment. *Decision* at 736. Plaintiffs moved for reconsideration, contending that the trial court's decision was based on an erroneous holding that Plaintiffs' claim was for partial breach of contract and not total breach of contract. *See* App'x 13–15. The Court of Federal Claims denied the motion for reconsideration and explained that it did not interpret Plaintiffs' claim as only a claim for partial breach of contract. *Id.*

Mr. Murray and Spout Springs appealed. We have jurisdiction under 28 U.S.C. § 1295(a)(3).

## II. STANDARD OF REVIEW

The Court of Federal Claims lacks subject matter jurisdiction "unless the petition thereon is filed within six years after such claim first accrues." 28 U.S.C. § 2501. "Whether a claim brought under the Tucker Act (28 U.S.C. § 1491) is barred by the statute of limitations is a question of law that may be based on underlying fact findings." *Chemehuevi Indian Tribe v. United States*, 104 F.4th 1314, 1321 (Fed. Cir. 2024). "Where a RCFC 12(b)(1) motion 'simply challenges the court's subject matter jurisdiction

based on the sufficiency of the pleading's allegations—that is, the movant presents a 'facial' attack on the pleading—then those allegations are taken as true and construed in a light most favorable to the complainant.'" *Id.* at 1320–21 (quoting *Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1583 (Fed. Cir. 1993)). However, where "a RCFC 12(b)(1) motion challenges the truth of jurisdictional facts alleged in the complaint," the Court of Federal Claims must "accept[] as true [the] uncontroverted factual allegations in the complaint and construe[] them in the light most favorable to the plaintiff," and may make further jurisdictional fact-findings. *Id.* at 1320 (internal quotation marks and citation omitted). Jurisdictional fact-finding is only appropriate in reviewing a "factual" attack.[2] *Moyer v. United States*, 190 F.3d 1314, 1318 (Fed. Cir. 1999) ("Fact-finding is proper when considering a motion to dismiss where the jurisdictional facts in the complaint . . . are challenged.").

"This court reviews de novo decisions of the Court of Federal Claims on matters of law and reviews for clear error findings of fact. Therefore, this court reviews the Court of Federal Claims' decision to dismiss de novo while its jurisdictional findings of fact are reviewed for clear error." *Banks v. United States*, 314 F.3d 1304, 1307–08 (Fed. Cir. 2003).

## III. DISCUSSION

As an initial matter, in this case the government was not clear about whether its motion was a "facial" or "factual" challenge, and the Court of Federal Claims did not expressly characterize the motion as one or the other.

---

[2]    If a motion to dismiss presents a factual attack, "discovery is available to ascertain the facts bearing on such issues." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 n.13 (1978).

Nevertheless, it is clear that the motion was a "factual" attack because it was not limited to the pleadings and was largely predicated on Mr. Murray's deposition testimony. *See* App'x 455 (government telling trial court its "motion stems entirely from Mr. Murray's deposition testimony"). While the Murrays suggested that the Rule 12(b)(1) motion was instead a "facial" challenge, *see* App'x 170–71 (citing standard of review for facial attack), the Murrays have never contended they were deprived of notice that the court might engage in fact-finding or that they did not have an opportunity to take discovery.  Therefore, the Court of Federal Claims did not err by making a jurisdictional finding of fact, and we review that finding of fact for clear error.

Appellants argue that the Court of Federal Claims erred because the record does not support a finding that the impact of snowmobile-related activity prior to 2016 constituted a "material interference" with the operation of Spout Springs.  Appellants' Br. 13–25.  Additionally, Appellants argue that the trial court misinterpreted their complaint as raising only a "partial breach" of contract claim.  *Id.* at 28–40.  We address each argument in turn.

A.

Because the complaint was filed on June 21, 2021, App'x 19–30, Appellants must establish that the claim did not accrue before June 21, 2015.  28 U.S.C. § 2501.  The six-year statute of limitations is a jurisdictional requirement that cannot be waived or equitably tolled.  *FloorPro, Inc. v. United States*, 680 F.3d 1377, 1380–81 (Fed. Cir. 2012); *see John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 136–39 (2008).  The burden of establishing timeliness rests on the plaintiffs.  *Alder Terrace, Inc. v. United States*, 161 F.3d 1372, 1377 (Fed. Cir. 1998).  A cause of action accrues when the breach of contract occurs.  *Id.* (citation omitted).  While the plaintiff must have actual or constructive knowledge that a breach occurred, *Holmes*

*v. United States*, 657 F.3d 1303, 1317 (Fed. Cir. 2011), we have "'soundly rejected' the notion 'that the filing of a lawsuit can be postponed until the full extent of the damage is known.'" *San Carlos Apache Tribe v. United States*, 639 F.3d 1346, 1354 (Fed. Cir. 2011) (quoting *Boling v. United States*, 220 F.3d 1365, 1371 (Fed. Cir. 2000)).

The relevant question before the Court of Federal Claims was when Appellants knew or should have known of the material interference with the operation of Spout Springs—that the snowmobiling activity got worse over time as a result of the breach is legally irrelevant. *See, e.g.*, *San Carlos Apache Tribe*, 639 F.3d at 1354; *Alder Terrace*, 161 F.3d at 1377.

In their complaint, Appellants alleged that the Forest Service breached the contract, here the Permit, by not prohibiting snowmobilers from the Spout Springs parking lot. *Decision* at 731; App'x 28. Appellants alleged that the Forest Service materially interfered with their operations by refusing to ban snowmobilers who were "consuming alcohol in the parking lot," driving "at very high and unsafe speeds," and causing "several close calls where serious injury was narrowly averted." App'x 24; *see also Decision* at 733–34. The complaint does not contain express, specific allegations as to when this alleged activity happened; how frequent it was; or when it impacted the Murrays' business at Spout Springs. *See* App'x 24 (generally stating that "[o]ver time, the snowmobile activity increased" without alleging that the material interference occurred after 2015). Thus, based on the uncontroverted allegations of the complaint, the question of when the alleged snowmobile activity became material remained an open question.

The government explored the issue of timing during Mr. Murray's deposition. Mr. Murray testified that the problematic snowmobile behavior began "around 2010."

App'x 148; *see also Decision* at 733.  He testified that "in 2010" there were close calls where people were "speeding on snowmobiles," would "s[w]erve and miss people," including kids, and that snowmobilers were frequently intoxicated.     App'x 135–37; *see Decision* at 733. Mr. Murray further testified that "attendance was falling off" by 2013, by which time Spout Springs was "starting to get a reputation of a snowmobile/ski area."  App'x 148; *Decision* at 733.    In other words, as the trial court reasonably found, Mr. Murray testified that the conditions that the complaint contends constituted material interference began in 2010 and had grown enough by 2013 that they noticeably impacted his business and its reputation.  *See Decision* at 731–33; App'x 135–37, 148.

The Court of Federal Claims reasonably rejected Appellants' contention that the snowmobile-related activity did not constitute material interference until 2016. *See* Appellants' Br. 13–25.  Appellants point to a 2017 email from Mr. Murray, reaffirmed at his deposition, that every year after 2011 the snowmobile activity got "a *little* more unmanageable."  Appellants' Br. 15 (emphasis in original) (quoting App'x 217; *id.* at 141).  Appellants also highlight Mr. Murray's testimony that the snowmobile problem "'started out small, just a couple people doing it' in 2010-2012" and that it got "'progressively worse'" until 2016 when it was "'getting crazy.'"  Appellants' Br. 15–17 (quoting App'x 291–95).  As an initial note, Mr. Murray's statement that "[t]he only difference year to year is that every year it [got] a little more unmanageable" supports a finding that the conditions in 2011 were not materially different from the conditions in 2016.  App'x 217; *id.* at 141; *see Decision* at 734.  By contrast, Mr. Murray testified that 2010 and 2011 were like "day and night" from prior years, due to the creation of oversized snowmobiles and larger trailers.     *Decision*   at 736 (quoting   App'x 146–47). Mr. Murray's testimony that the "day and night" change was in 2010–2012, while only little changes occurred later,

supports the finding of the Court of Federal Claims that any material interference occurred prior to June 21, 2015. *Decision* at 733–34; App'x 141–47. The Court of Federal Claims reasonably rejected Appellants' arguments and properly weighed the record.

The trial court found, and cited evidence for its finding, that the Murrays' claim accrued prior to June 21, 2015, and was, therefore, not timely filed. In doing so, the court committed no procedural error; nor did it make a clearly erroneous finding of fact in its evaluation of the complaint and Mr. Murray's deposition testimony. Instead, the trial court credited the uncontroverted, though also undated, allegations of the complaint and made a finding as to timing based on Mr. Murray's own testimony. The Court of Federal Claims' jurisdiction turned on the timing by which the Murrays' breach of contract claim accrued, and this issue was put before the court in the government's "factual" challenge to jurisdiction. Because the Murrays had been given adequate notice and opportunity to respond to the motion, the Court of Federal Claims was free to make a jurisdictional fact-finding about when the alleged materially interfering events occurred and that finding was not clearly erroneous. The Murrays' arguments to the contrary lack merit.

## B.

Appellants contend that Mr. Murray was entitled to bring a breach of contract claim for total breach only at the time he ceased operations. Appellants' Br. 28–40. As an initial matter, this argument is forfeited because it was "inherently knowable" but raised for the first time "in a motion for reconsideration under [RCFC] 59(a)." *Caldwell v. United States*, 391 F.3d 1226, 1235 (Fed. Cir. 2004); s*ee* App'x 13–15. In any event, we agree with the Court of Federal Claims that Appellants' argument fails on the merits: this is not a case where the parties owed each other compartmentalized performances that can be segmented

into partial breaches, *see, e.g.*, *Ind. Mich. Power Co. v. United States*, 422 F.3d 1369, 1374 (Fed. Cir. 2005), but "a claim based on a single distinct event which has ill effects that continue to accumulate over time." *Ariadne Fin. Servs. Pty. Ltd. v. United States*, 133 F.3d 874, 879 (Fed. Cir. 1998) (refusing to extend the statute of limitations when the government's actions did "not give rise to a separate cause of action."). Thus, Appellants' cited partial breach cases are inapposite, and the Court of Federal Claims did not abuse its discretion in denying the motion for reconsideration.

## IV. CONCLUSION

We have considered Appellants' remaining arguments and find them unpersuasive. For the reasons above, we *affirm* the judgment of the Court of Federal Claims.

### AFFIRMED

### COSTS

No costs.