# United States Court of Appeals for the Federal Circuit

2008-1407

Donald C. Winter, SECRETARY OF THE NAVY,

Appellant,

v.

FLOORPRO, INC.,

Appellee.


Domenique Kirchner, Senior Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for appellant. With her on the brief were Michael F. Hertz, Acting Assistant Attorney General, and Jeanne E. Davidson, Director. Of counsel on the brief was Pamela Nestell, Senior Trial Attorney, NAVFAC Litigation Headquarters, United States Department of the Navy, of Washington, DC.

James S. DelSordo, Argus Legal, LLC, of Manassas, Virginia, argued for appellee.

Appealed from: Armed Services Board of Contract Appeals

Administrative Judge Rollin A. Van Broekhoven

# United States Court of Appeals for the Federal Circuit

2008-1407

Donald C. Winter, SECRETARY OF THE NAVY,

Appellant,

v.

FLOORPRO, INC.,

Appellee.

Appeal from the Armed Services Board of Contract Appeals in no. 54143.

_____

DECIDED:  June 26, 2009

_____

Before MICHEL, <u>Chief Judge</u>, LOURIE and PROST, <u>Circuit Judges</u>.

PROST, <u>Circuit Judge</u>.

In this case, we are presented with the question of whether the Contract Disputes Act of 1978 ("CDA") gives the Armed Services Board of Contract Appeals ("Board") jurisdiction over a claim against the government brought by a subcontractor that is a third-party beneficiary of a contract between the government and the prime contractor. For the reasons stated below, we hold that it does not.

## I.  BACKGROUND

On February 6, 2002, the Navy awarded a contract for the installation of floor coating at warehouse bays on a military base to G.M. & W. Construction Corp. ("GM&W"), a minority-owned business qualifying under section 8(a) of the Small Business Act.  The Navy agreed to pay GM&W $42,000 for the completion of the work.

FloorPro, Inc., which is not a section 8(a) contractor, entered into a subcontract agreement with GM&W on February 11, 2002. Under the terms of the subcontract, FloorPro agreed to perform the work specified by the Navy's contract with GM&W for $37,500.

FloorPro completed all of the work under the contract by February 27, 2002, and submitted its invoice to GM&W on March 6, 2002. On March 8, 2002, the government's contracting officer notified GM&W that the work had been completed satisfactorily. The government received GM&W's request for payment on April 16, 2002. The next day, FloorPro informed the government that GM&W had not paid its invoice on the subcontract. On April 22, 2002, the government's contracting officer called GM&W to inquire about GM&W's failure to pay FloorPro. GM&W informed the contracting officer that there were various pending claims against it and that it did not know whether it would be able to use funds deposited into its account to pay FloorPro. Accordingly, the government and GM&W agreed to modify the original contract, which provided for payment to be made directly to GM&W, to specify that the government would issue a two-party check made payable to both FloorPro and GM&W. This agreement was executed by GM&W and the government as Modification No. P00001 on April 22, 2002.

Notwithstanding the modification, the government paid GM&W directly. On July 18, 2002, the contracting officer notified FloorPro that the payment had not been made by two-party check. Several weeks later, the contracting officer confirmed to FloorPro that GM&W had been paid in full. Thereafter, FloorPro's attorney sent a letter to the contracting officer that purported to be a claim for payment based on the government's

alleged violation of the contract modification. The government declined to issue a decision on FloorPro's claim because it did not have a contract with FloorPro.

On March 27, 2003, FloorPro filed an appeal against the government with the Board. The underlying claim was not sponsored by GM&W.[1] The government filed a motion to dismiss in which it alleged that the Board lacked jurisdiction over FloorPro's appeal. Specifically, the government argued that the CDA only authorizes appeals to the Board taken by "contractors," and thus claims brought by FloorPro, a subcontractor, are outside the Board's jurisdiction. The Board denied the government's motion, concluding that FloorPro was an intended third-party beneficiary of the contract modification and, therefore, could file a claim even in the absence of contractual privity. In re FloorPro, Inc., ASBCA No. 54143, 04-1 BCA ¶ 32571, 2004 ASBCA LEXIS 23 (Mar. 30, 2004) ("FloorPro I"). The Board subsequently determined that there were no genuine issues of material fact with respect to whether the government was liable to FloorPro for breaching the payment provision. In re FloorPro, Inc., ASBCA No. 54143, 07-2 BCA ¶ 33615, 2007 ASBCA LEXIS 38 (June 27, 2007) ("FloorPro II"). Accordingly, it granted summary judgment in favor of FloorPro and awarded $37,500 plus interest. Id. Following the Board's decision in FloorPro II, the government moved for reconsideration of the Board's conclusions with respect to jurisdiction and FloorPro's status as a third-party beneficiary of the contract modification. The Board reaffirmed its

---

[1] Prime contractors are permitted to sponsor claims brought by subcontractors against the government. See 48 C.F.R. § 44.203(c). Sponsorship allows the subcontractor to proceed against the government "through, and with the consent and cooperation of, the prime, and in the prime's name." Erickson Air Crane Co. of Wash., Inc. v. United States, 731 F.2d 810, 814 (Fed. Cir. 1984).

prior decisions on both grounds.  In re FloorPro, Inc., ASBCA No. 54143, 08-1 BCA ¶ 33793, 2008 ASBCA LEXIS 12 (Feb. 8, 2008) ("FloorPro III").

The government timely appealed.  We have jurisdiction under 28 U.S.C. § 1295(a)(10).

## II.  DISCUSSION

"The determination of jurisdiction under the CDA is a question of law.  It is therefore subject to de novo review."  England v. Swanson Group, Inc., 353 F.3d 1375, 1378 (Fed. Cir. 2004).

The CDA was enacted to "provide[] a fair, balanced, and comprehensive statutory system of legal and administrative remedies in resolving government contract claims."  Contract Disputes Act of 1978, S. Rep. No. 95-1118, at 1 (1978), as reprinted in 1978 U.S.C.C.A.N. 5235, 5235.  Under the CDA, a contractor has two possible avenues of appeal after an adverse decision from a contracting officer.  Id. at 2.  First, the contractor may file an appeal with an agency board of contract appeals.  41 U.S.C. § 606.  In the alternative, the contractor may file a claim against the government in the United States Court of Federal Claims.  Id. § 609(a).  Importantly, these provisions apply only to those who are "contractors" within the meaning of the CDA, which defines the term to mean "a party to a Government contract other than the Government."  Id. § 601(4); see also Admiralty Constr., Inc. v. Dalton, 156 F.3d 1217, 1220 (Fed. Cir. 1998) ("[T]he Act emphasizes that only a 'contractor' may appeal the decision of a contracting officer.").  Moreover, the CDA only applies to "express or implied contract[s] . . . entered into by an executive agency."  41 U.S.C. § 602(a); see also Admiralty Constr., 156 F.3d at 1221 (surety could not appeal a contracting officer's

decision under the CDA because "it cannot show that it 'entered into' a contract with 'an executive agency'").

In this case, the Board determined that FloorPro was not in contractual privity with the government. FloorPro III, 2008 ASBCA LEXIS 12, at *3-4 ("We agree[] that Modification No. P00001 did not satisfy the privity requirements for our jurisdiction under the CDA in the sense of creating an express or implied contract between appellant and the government.").[2]  However, the Board found that it nevertheless had jurisdiction because FloorPro was a third-party beneficiary of the contract modification made by the government and GM&W.  The Board relied heavily on D & H Distributing Co. v. United States, 102 F.3d 542 (Fed. Cir. 1996), a case in which this court held that a third-party beneficiary could enforce a contract provision against the United States in the Court of Federal Claims.  The Board reasoned that although D & H did not specify whether the source of jurisdiction at issue was the CDA or the Tucker Act, privity is generally a requirement to bring suit on a contract in either forum.  Thus, in the Board's view, the exception to the privity requirement set forth in D & H was applicable to the CDA regardless of the source of jurisdiction in D & H.  FloorPro I, 2004 ASBCA LEXIS 23, at *30-31.  Based on this analysis, the Board concluded that "the term 'contractor' in

---

[2]  FloorPro argues on appeal that it was in fact a party to the contract between GM&W and the government because it "gained contractual rights and privileges through the issuance of Modification P00001."  However, FloorPro does not offer any evidence to refute the Board's conclusion that "there is no evidence that the Government and [FloorPro] entered into a contractual relationship."  FloorPro I, 2004 ASBCA LEXIS 23, at *20.  Moreover, the "rights and privileges" identified by FloorPro are consistent with the Board's conclusion that it was a third-party beneficiary, and not a party, to the contract.  See id. at *32; see also Black's Law Dictionary 165 (8th ed. 2004) (defining "third-party beneficiary" as "[a] person who, though not a party to a contract, stands to benefit from the contract's performance" (emphasis added)).

sections 2 and 7 of the CDA includes intended beneficiaries, such as [FloorPro], in which the subcontractor is identified in the contract as entitled to receive the payment for the work performed by the subcontractor." FloorPro III, 2008 ASBCA LEXIS 12, at *60-61.

We begin with the established principle that a "waiver of sovereign immunity must be strictly construed in favor of the sovereign." Orff v. United States, 545 U.S. 596, 601-02 (2005). Such a waiver "must be unequivocally expressed in statutory text and will not be implied." Lane v. Pena, 518 U.S. 187, 192 (1996) (citations omitted). This court has recognized that the CDA is "a statute waiving sovereign immunity, which must be strictly construed." Cosmic Constr. Co. v. United States, 697 F.2d 1389, 1390 (Fed. Cir. 1982).

As mentioned above, the provisions of the CDA apply only to "contractors," i.e., "part[ies] to a Government contract other than the Government," 41 U.S.C. § 601(4); see also, e.g., id. § 604 (creating liability for "contractors" who bring fraudulent claims against the government); id. § 605(a) ("All claims by a contractor against the government relating to a contract shall be in writing and shall be submitted to the contracting officer for a decision."); id. § 606 (authorizing appeals by "contractors" to agency boards of appeals); id. § 609(a) (authorizing appeals by "contractors" to the Court of Federal Claims); id. § 611 (providing for interest on "amounts found due contractors"); id. § 612 (providing for monetary awards to "contractors"). In light of this statutory limitation on the CDA's scope, this court has previously held that those who are not in privity of contract with the government cannot avail themselves of the CDA's appeal provisions. See, e.g., Fireman's Fund Ins. Co. v. England, 313 F.3d 1344, 1350-

52 (Fed. Cir. 2002); <u>Admiralty Constr.</u>, 156 F.3d at 1220-21; <u>Erickson</u>, 731 F.2d at 813.

The legislative history of the CDA confirms this limitation:

> The recommendations of the procurement commission specifically exclude bringing subcontractors under the provisions of S. 3178. . . . By administering its procurement through a single point of contact, the government's job is made both simpler and cheaper. The single point of contact approach also helps suppress frivolous claims. . . . By forcing the prime contractor to administer its subcontractor network, the government permits prime contractors and subcontractors at all tiers to use to some extent their familiar commercial procedures in contract award and administration. . . . Finally, by denying the subcontractors direct access to administrative remedies, the government is forcing the prime contractor and the subcontractor to negotiate their disputes.

S. Rep. No. 95-1118, at 16-17.

As the Board correctly noted, subcontractors are generally not in privity of contract with the government.[3] <u>See</u> <u>Johnson Controls</u>, 713 F.2d at 1551. However, the Board concluded that there was an exception to the CDA's privity requirement for subcontractors who were also third-party beneficiaries of the contract between the government and the prime contractor.[4] <u>FloorPro III</u>, 2008 ASBCA LEXIS 12, at *60-61. This was incorrect. The CDA's requirement that only "contractors" may appeal to the

---

[3]     An exception to this rule may arise when an agency relationship between the government and the prime contractor is established by the terms of the prime contract. <u>See</u> <u>United States v. Johnson Controls, Inc.</u>, 713 F.2d 1541, 1551 (Fed. Cir. 1983). If the prime contractor is acting as the government's agent when it enters into the subcontractor agreement, the subcontractor may be permitted to sue the government directly. <u>See</u> <u>id.</u> This exception is inapplicable in this case because the Board did not find that GM&W was acting as the government's agent and FloorPro makes no such allegation on appeal.

[4]     The government disputes the Board's conclusion that FloorPro was an intended third-party beneficiary of the contract modification. In the government's view, FloorPro was not such a beneficiary because the modification was made after FloorPro had completed its performance on the subcontract. Because the Board lacks jurisdiction over FloorPro's claim regardless of whether it was a third-party beneficiary, we need not decide this issue.

Board does not distinguish between ordinary subcontractors and those that are also intended third-party beneficiaries. Rather, under the strict interpretation required of waivers of sovereign immunity, the CDA does not permit appeals by anyone who is not a "party to a Government contract other than the Government." 41 U.S.C. § 601(4). This includes subcontractors that are third-party beneficiaries of the prime contract. See Black's Law Dictionary 165 (8th ed. 2004) (defining "third-party beneficiary" as "[a] person who, though not a party to a contract, stands to benefit from the contract's performance" (emphasis added)); see also D & H, 102 F.3d at 546 (concluding that the subcontractor, "which was not a party to the contract," "enjoys the status of a third party beneficiary"); JGB Enters., Inc. v. United States, 63 Fed. Cl. 319, 330-31 (2004) (holding that third-party beneficiary subcontractors are not "contractors" within the meaning of the CDA).

The Board's reliance on D & H for the proposition that the CDA permits direct appeals by third-party beneficiary subcontractors was misplaced. In D & H, the prime contractor and the government modified their contract to provide that payment should be made jointly to the prime contractor and the subcontractor. 102 F.3d at 544. As in the present case, however, the government issued payment in the name of the prime contractor only. Id. The subcontractor sued the government in the Court of Federal Claims alleging that it was entitled to recover either as the beneficiary of an implied-in-fact contract between it and the government or as a third-party beneficiary of the contract between the government and the prime contractor. Id. at 545. This court rejected the subcontractor's implied-in-fact contractual theory because of "[t]he absence of a showing of mutuality of intent to contract between the government and [the

subcontractor]." Id. Turning to the subcontractor's third-party beneficiary theory, the court held that although the subcontractor "was not a party to the contract," it "enjoys the status of a third party beneficiary with respect to the payment clause of the modified contract and is therefore entitled to enforce that clause against the government." Id. at 546. The court reasoned that it was settled law that creditor beneficiaries have "full rights to sue under the original contract." Id. at 547 (citing several treatises and the Restatement (Second) of Contracts).

While the facts in D & H are similar to those in the present case, D & H differs in one critical respect. The subcontractor in D & H invoked the Court of Federal Claims's jurisdiction under subsection (a)(1) of the Tucker Act, 28 U.S.C. § 1491, not under the CDA. Complaint at 1, D & H Distrib. Co. v. United States, No. 93-381C (Fed. Cl. Nov. 30, 1995); see also Brief for D & H Distributing Co. at v, D & H Distrib. Co. v. United States, 102 F.3d 542 (Fed. Cir. 1996) (No. 96-5063) ("The United States Court of Federal Claims had jurisdiction pursuant to 28 U.S.C. § 1491(a)(1)."). Accordingly, the court in D & H was not interpreting or applying the CDA's provision that only "contractors" may appeal to agency boards of appeals.

Moreover, the grant of jurisdiction in subsection (a)(1) of the Tucker Act is broader than the Board's jurisdiction under the CDA. See 28 U.S.C. § 1491(a)(1) ("The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded . . . upon any express or implied contract with the United States . . . ."). Although privity has generally been required for suits brought under the Tucker Act, see Merritt v. United States, 267 U.S. 338, 340 (1925), the Tucker Act's privity requirement is separate and distinct from the CDA's statutory

requirement that only "contractors" may appeal to agency boards of contract appeals. Thus, while the Court of Federal Claims's jurisdiction under subsection (a)(1) of the Tucker Act and the Board's jurisdiction over appeals under the CDA each generally require individuals seeking relief to be in privity of contract with the government, the two waivers of sovereign immunity are not identical. Accordingly, this court's decision in D & H, which does not even mention the CDA, does not support the Board's conclusion that third-party beneficiary subcontractors are "contractors" within the meaning of the CDA.

Consistent with the requirement that waivers of sovereign immunity be construed narrowly, we conclude that FloorPro is not a "contractor" within the meaning of the CDA. Accordingly, the Board lacks jurisdiction over FloorPro's appeal of the contracting officer's decision.

## III. CONCLUSION

For the foregoing reasons, we vacate the Board's decision and remand with instructions for the Board to dismiss FloorPro's appeal.

### VACATED AND REMANDED

### COSTS

Each party shall bear its own costs.