ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeals of - | ) |
| | ) |
| Contrack Watts-Uejo Kogyo JV | ) ASBCA Nos. 63211, 63212, 63213 |
| | )              63214, 63215 |
| Under Contract No. W912HV-17-D-0013-001 | ) |

APPEARANCES FOR THE APPELLANT:      Sara Beiro Farabow, Esq
                                        Jeffrey M. Hummel, Esq.
                                        Michael E. Wagner, Jr., Esq.
                                          Seyfarth Shaw LLP
                                          Washington, DC

APPEARANCES FOR THE GOVERNMENT:    Michael P. Goodman, Esq.
                                          Engineer Chief Trial Attorney
                                          Bryan C. Naquin, Esq
                                          Engineer Trial Attorney
                                          U.S. Army Engineer District, Fort Worth

## OPINION BY ADMINISTRATIVE JUDGE MELNICK DISMISSING THE APPEAL FOR LACK OF JURISDICTION

These appeals were brought on behalf of a joint venture that contracted to perform construction in Japan. Because we conclude that the individual submitting the claim, authorizing the appeals, and retaining counsel, lacked authority to do so for the joint venture, we dismiss for lack of jurisdiction.

## FINDINGS OF FACT

I.      The Joint Venture Agreement

1. On April 1, 2016, Contrack Watts, Inc. (CWI) and Uejo Kogyo K.K. (UK) established a joint venture (the "Joint Venture" or "JV") to combine their efforts to perform the Multiple Award Task Order (MATOC) contract identified above (R4, tab 2). Article 3 of the JV agreement limits each party's authority to act for the JV with the following relevant provisions:

> 3.1    No Party shall except with the prior consent of the other Party make, directly or indirectly, solely or in association with others, any agreement with the Employer or any third party in connection to the Project.

* * * * *

3.4     No Party shall have the authority to bind or to make any commitment on behalf of the JV or of any other Party unless such authority is expressed in writing by Parties jointly in regard to the JV or by a Party individually in regard to the other Party.

(*Id.* at 2)  Article 5 of the agreement, entitled Lead Party, states:

It is mutually agreed that Mr. Wahid Hakki, CEO of Contrack Watts is nominated as the Chairman, and Mr. Shinko Uejo, President of Uejo Kogyo is nominated as the Vice Chairman of the Board of the Joint Venture.

It has been agreed that Mr. Wahid Hakki, CEO of Contrack Watts will act as the Program Manager and will be representing the Joint Venture in all aspects related to communication with the Employer and the operation performance. Also, all active progress details shall be reported to him through documentation.

(*Id.* at 3)  Article 6 of the agreement, entitled Supervisory Board, identifies three members from CWI, including Mr. Hakki and Mr. Jason Roberts, and three members from UK, including Mr. Shinko Uejo (*id.*).  Two other provisions are also relevant. They state:

6.3     The Supervisory Board will establish within the first two (2) months systems and should be responsible for discussing and making decisions on the general policy of the Joint Venture for the execution of the Contract, Performance of the Works, and financial matters.

(*Id.*)

6.7     Each party shall have one vote at the Board (irrespective of the number of members attending) and decisions of the Board shall be taken unanimously.  If unanimity cannot be achieved, then the meeting shall be adjourned for twenty four (24) hours or any other date mutually agreed between the Parties.  If unanimity is still not achieved, the meeting shall be reconvened within seven (7) days or any other date mutually agreed between the Parties and the members shall attempt to finally reach unanimous decision.

(*Id.* at 4)  Article 10 provides that the "Agreement shall be construed in accordance with the substantive laws of [the US & JAPAN]" (*id.* at 5).  Article 13 states that neither party "shall be deemed to have waived any provision" of the agreement unless it is done in writing and signed.  Similarly, Article 14 invalidates any change, amendment, or modification unless it is in writing and executed by the parties.  (*Id.*)

2

II.     The Contract, Party Representations, and Purported Claim

2.  On December 19, 2016, the United States Army Corps of Engineers ("Corps" or "government") awarded the MATOC to the JV.  The offer had been signed by representatives of both JV partners.  (R4, tabs 3-4)  On the same date, the government awarded a task order for the design and construction of a child development center in Yokosuka, Japan (R4, tab 5).  On December 23, 2016, the parties jointly executed a letter to the government designating the JV's six original Supervisory Board members as "authorized representatives" who "may sign proposals, modifications, bonds, final payment paperwork, and take any other necessary actions on behalf of [the JV] for the aforementioned contract" (R4, tab 6).  On June 8, 2017, Mr. Roberts executed the JV's offer for a task order to construct a Company Operations Complex in Kyogamisaki, Japan (R4, tab 7).  On September 28, 2017, the government issued the task order for that work to the JV (R4, tab 8).

3.  On January 15, 2021, the government received a letter written by UK noting changes in the "JV committee," which we take to mean the Supervisory Board.  The letter identifies Mr. Kevin McClain from CWI as the new board chairman.  It also names Mr. Omar El Bassiouny from CWI to the Board.  The letter states that the listed individuals "may sign proposal, modifications, bonds, final payment paperwork and . . . any other necessary actions on behalf" of the JV for the MATOC.  "However," the letter continues, "all matters listed must be approved by the JV committee members listed above."  (R4, tab 17 at 17)  UK emphasized to the government in a February 3, 2021 email that it had specifically revised an initial draft of the letter to add this restrictive language for the final version (R4, tab 21).  A February 24, 2021, letter to the contracting officer from Mr. El Bassiouny of CWI confirms that UK's January 15 letter was approved by both JV partners.  It additionally opines that Mr. McLain is the successor to the program manager powers granted to Mr. Hakki by Article 5 of the JV Agreement.  (R4, tab 25)  The next day, February 25, UK notified the government that it believed CWI had violated the JV Agreement and that the parties were engaged in a legal dispute in Japan.  It requested that the government not approve any unilateral action taken by CWI.  (R4, tab 26)

4.  On March 25, 2021, CWI's counsel wrote to the government, touting CWI's experience and achievements working on the contract, seeking the government to release funds it was holding and to review a pending Request for Equitable Adjustment (REA).  She contended that CWI had the sole authority to make such demands.  She accused UK and the government of actively interfering with CWI's performance and financing of the contract.  (R4, tab 29)  A March 27 response to the government from UK denied CWI's claims to sole power to act without its approval and complained that CWI was not communicating with it (R4, tab 30).  By letter to the government dated April 12, 2021, UK denied that Mr. McLain was granted any power to act alone without the approval of the JV members (R4, tab 32).

5. Much correspondence followed, with the government taking the position that actions to bind the JV must be jointly advanced by the parties (R4, tab 33). On September 16, 2021, Mr. El Bassiouny of CWI notified UK that he intended to proceed with the submittal of a JV claim to the government. He also accused UK of violating the JV agreement. (R4, tab 48)

6. On September 28, 2021, Mr. El Bassiouny purported to submit a certified claim to the contracting officer on behalf of the JV for two outstanding payment invoices and four REAs (R4, tab 49). On September 30, UK members of the Supervisory Board wrote to the government expressing its disagreement with the contents of Mr. El Basssiouny's September 28 letter (R4, tab 17 at 17; tab 50). On December 1, 2021, the contracting officer responded that the September 28 attempted claim was not certified by an individual authorized to bind the JV as well as the fact that one of the partners had objected to it in writing (R4, tab 1). On February 28, 2022, CWI's counsel filed a notice of appeal from the contracting officer's December 1, 2021 decision, claiming now to be acting as counsel for the JV. The Board's Recorder divided the appeal into the five docket numbers listed above.

7. On March 30, 2022, the government filed a motion to dismiss the appeals on two grounds. The government contends that Mr. El Bassiouny was not authorized to certify a claim on behalf of the JV. It also argues that the appeals have not been brought by a duly authorized representative of the contractor.[1]

DECISION

We need not address whether an authorized individual certified the claim because, regardless, we find that the claim was not submitted, and the appeals not authorized, by an individual with authority to do so and to retain counsel for that purpose, which deprives the Board of jurisdiction.[2]

---

[1] By order dated April 4, 2022, the Board restricted briefing to the second issue. By order dated June 9, 2022, the Board vacated its April 4, 2022, order, permitting full briefing of the government's motion. The Board stated that in addition to presenting their desired arguments, the parties should address whether the appeal has been authorized by someone with authority to do so for the JV.

[2] Even if no authorized person certified the claim, a question remains whether that fact would dictate we lack jurisdiction. The Contract Disputes Act permits defective certifications to be corrected. 41 U.S.C. § 7103(b)(3); *see Dai Global, LLC v. Adm'r of the United States Agency for Int'l Dev.*, 945 F.3d 1196 (Fed. Cir. 2019). "A 'defective certification' is defined in the [Federal Acquisition Regulation] to include 'a certificate . . . which is not executed by a person duly authorized to bind the contractor with respect to the claim.'" 48 C.F.R. § 33.201; *see Bell Helicopter Textron Inc.*, ASBCA No. 59561,

The Board's jurisdiction is governed by the Contract Disputes Act (CDA), 41 U.S.C. § 7101-09. The CDA is a waiver of sovereign immunity that must be strictly construed. *Winter v. FloorPro, Inc.*, 570 F.3d 1367, 1370 (Fed. Cir. 2009). Under the CDA, only a contractor can submit a claim and bring an appeal to this Board. 41 U.S.C. §§ 7103(a), 7104(a); *FloorPro,* 570 F.3d. at 1369-70. And a contractor is limited to a party to a government contract other than the government. 41 U.S.C. § 7101(7); *FloorPro,* 570 F.3d. at 1369-70; *Kellogg Brown & Root Servs., Inc.,* ASBCA No. 59385, 20-1 BCA ¶ 37,656 at 182,825.

A joint venture is an association of partners established by contract to carry out a specific business activity. It is essentially a partnership created for a limited purpose. *Sadelmi Joint Venture v. Dalton*, 5 F.3d 510, 513 (Fed. Cir. 1993). Normally, a joint venture has an independent existence from its partners. When the government contracts with a joint venture, it is the joint venture that is in privity with the government, and therefore the contractor that can submit a claim and bring an appeal, not its partners in their own capacity. *See BCC-UIProjects-ZAAZTC Team JV*, ASBCA No. 62846, 22-1 BCA ¶ 38,119 at 185,171, *appeal docketed*, No. 2022-2143 (Fed. Cir. Aug, 23, 2022); *WorleyParsons, Intl, Inc.*, ASBCA No. 57930, 14-1 BCA ¶ 35,482 at 173,959; *Brother's Cleaning Serv., Inc. v. United States*, 38 Fed. Cl. 106, 108 (1997). The person or entity acting on behalf of the joint venture must possess authority to bind it as to a claim. *See Kiewit/Tulsa Houston v. United States*, 981 F.2d 531, 533 (Fed. Cir. 1992). However, "[t]he general rule is that each member of a joint venture has the authority to act for and bind the enterprise, absent agreement to the contrary[.]" *Sadelmi Joint Venture*, 5 F.3d at 513. The question we consider here is whether an authorized person acted to pursue this claim, approve an appeal, and retain counsel to do so.

Appellant does not contend that the claim and appeals have been brought with the consent of both CWI and UK. In fact, UK requested the government not to approve any unilateral action by CWI and has expressed disagreement with the claim (findings 3, 6). Instead, appellant presents Mr. El Bassiouny's declaration, in which he testifies that along with submitting the claim he has unilaterally acted on behalf of the JV to engage CWI's counsel to pursue the appeals and represent the JV (El Bassiouny decl. ¶¶ 20, 22-23). Appellant says that in his capacity as General Manager of CWI, and as a member of the JV's Supervisory Board, Mr. El Bassiouny is authorized to take this action regardless of what UK thinks. Appellant also argues that under the JV Agreement, CWI is the managing member empowered to correspond with the government and handle all JV operations. It suggests that consequently CWI (and therefore Mr. El Bassiouny) has a broad grant of power to pursue claims and appeals for the JV and hire counsel to do so.

---

15-1 BCA ¶ 36,111 at 176,291. Neither party briefed this issue.

As the proponent of our jurisdiction appellant bears the burden of establishing it. *Raytheon Missile Sys.*, ASBCA No. 58011, 13 BCA ¶ 35,241 at 173,015; *see also Gen. Mills, Inc. v. United States*, 957 F.3d 1275, 1284 (Fed. Cir. 2020). We decide any disputed facts relating to jurisdiction based upon our review of the record. *Raytheon Missile Sys.*, 13 BCA ¶ 35,241 at 173,016. "We may evaluate our own jurisdiction at any time by interpreting the joint venture agreement." *In re Sarang-Nat'l Joint Venture*, ASBCA No. 54992, 06-1 BCA ¶ 33,232 at 164,681. We follow our applicable precedent because, though the JV agreement is also to be construed in accordance with the substantive laws of Japan, neither party cited any contrary Japanese law. "A contract must . . . be construed as a whole and 'in a manner that gives meaning to all of its provisions and makes sense.'" *Bell/Heery v. United States*, 739 F.3d 1324, 1331 (Fed. Cir. 2014) (quoting *McAbee Constr., Inc. v. United States*, 97 F.3d 1431, 1435 (Fed. Cir. 1996)). A sensible reading, giving meaning to all the agreement's provisions, leads to the conclusion that Mr. El Bassiouny lacks the authority he claims. Section 3.4 bars the parties from binding or making any commitment on behalf of the JV unless both parties have granted such authority in writing. Similarly, section 3.1 bars an individual party from making any agreement with a third party in connection to the project without the prior consent of the other party. (Finding 1) Initially, the partners agreed that the original members of the Supervisory Board were authorized to sign proposals, bonds, final payment paperwork, and take any other necessary actions on behalf of the JV for the contract. Consequently, Mr. Roberts, who was designated as an original member of the Board from CWI, possessed the authority to execute the JV's offer for the Company Operations Complex task order. (Findings 1-2)

Appellant suggests that Mr. El Bassiouny was authorized to submit this claim, retain counsel, and prosecute these appeals for the JV given that he too was later named one of the six members of the Supervisory Board. It is true that the January 15, 2021, UK letter (approved by CWI) identifying the board's reconstituted membership to include Mr. El Bassiouny, also acknowledged that each member "may sign proposals, modifications, bonds, final payment paperwork and . . . any other necessary actions on behalf" of the JV for the MATOC. However, unlike the parties' December 23, 2016, letter describing the authority of the board's original members, this one constrained that power by mandating that "all matters must be approved by the JV committee members listed above." (Finding 3)[3] Considered as a whole, the letter reflects a grant to

_____

[3] In contrast to UK's January 15, 2021, letter, Mr. El Bassiouny's declaration merely states that the JV partners appointed him "as an authorized representative and agreed [he] could take action on behalf of the JV" (El Bassiouny decl. ¶ 11). He does not refer to any limitations upon his exercise of that power. However, UK's January 15 letter was assented to by letter to the contracting officer from Mr. Bassiouny dated February 24, 2021, without any objection by him (finding 3). The contemporaneous nature of those letters weighs in favor of

6

individual board members of signatory authority over the described matters after they have been approved by the board. It does not empower Mr. El Bassiouny to unilaterally decide to commit the JV to whatever he wishes. Here, other members of the Supervisory Board from UK have expressed disagreement with the attempted claim (finding 6). Decisions of the board require unanimous agreement by the JV parties (finding 1). Indeed, if individual members of the Supervisory Board possessed unfettered power to act for the JV, as appellant contends, then CWI and UK could engage in a chaotic tug of war, with a member from CWI submitting a claim, retaining counsel to pursue legal action, and directing the course of the litigation and arguments to be advanced, followed at any time by another member from UK withdrawing the claim (or altering its contents), firing counsel (or substituting a new one), and ordering the appeal dropped (or the arguments changed). This is inconsistent with the intent of Article 6.7, requiring unanimity in Supervisory Board decisions (finding 1). *See Kiewit/Tulsa Houston*, 981 F.2d at 534 (enforcing joint venture agreement provisions withholding from one partner or individual the authority to bind the other party except pursuant to an express delegation in writing by unanimous vote of the partners). The restrictions imposed upon individual board members' authority to act for the JV that is reflected in UK's January 15, 2021, letter precludes that possibility.

Separately, appellant maintains that Article 5 of the agreement designates CWI as the managing member of the JV, authorized to hire counsel and prosecute claims for it. It suggests that authority applies to Mr. Bassiouny as well. We disagree. Article 5 designates Mr. Wahid Hakki, CEO of Contrack Watts, to act as Program Manager to represent the JV with the government "and the operation performance." Regardless of the exact scope of the powers described by Article 5, one thing is certain, it grants nothing to Mr. El Bassiouny. Contrary to appellant's suggestion, nothing in Article 5 empowers CWI to exercise the described authority through any employees of its choice (finding 1).

Interestingly, Mr. El Bassiouny's February 24, 2021, letter to the contracting officer purports to identify Mr. Kevin McClain of CWI, not himself, as the successor to the program manager powers granted to Mr. Hakki by Article 5 (finding 3). If we were to accept that designation it still fails to evidence that Mr. El Bassiouny possessed authority to exercise those powers. Anyway, we doubt the validity of that announcement given that Article 14 requires any change to the JV agreement be executed in writing by both parties (finding 1). The record does not contain a written agreement by the parties modifying Article 5 to vest its program manager powers in Mr. McLain, and UK denies that Mr. McClain has been granted any unilateral authority not subject to the approval of the Supervisory Board (finding 4). Though UK's January 15, 2021, letter names Mr. McLain the new Supervisory Board

concluding that the January 15 letter's requirement for JV committee approval of board member actions reflects the actual agreement of the parties.

7

chairman, it is silent about Article 5's program manager authority (finding 3). Even if such a writing exists, and even if Article 5 authorized him to submit this claim, approve an appeal, and retain counsel to pursue it, there is no evidence that Mr. McLain has consented to any such action.

Appellant also argues that the partners' performance of the contract demonstrates that Mr. El Bassiouny could authorize the pursuit of these appeals.[4] In addition to observing that Mr. Roberts of CWI signed the JV's offer for the Company Operations Complex, which we have distinguished above, it also notes that CWI handled all correspondence, managed the onsite work, supplied supervisory personnel, submitted payment applications and change order requests, established bank accounts and an accounting system, paid subcontractors and suppliers, managed financials, and addressed warranty claims (El Bassiouny decl. ¶¶ 12-17). It is not clear any of these acts are commitments on behalf of the JV. Anyway, Mr. El Bassiouny does not testify he performed any of them, or that whoever did so lacked authorization from the Supervisory Board.

Appellant also contends that our analysis should be limited to the requirements of Board Rule 15, governing representation before this Board. That rule recognizes that a joint venture may be represented here by one of its members or a duly licensed attorney at law. Board Rule 15(a). The Board's rules do not supersede the conditions of its jurisdiction, which are dependent upon whether the person purporting to act for the JV was permitted to do so under the JV agreement's terms. We hold Mr. El Bassiouny was not authorized by the JV agreement, and arrangement established by the parties' January 15 and February 24, 2021 letters, to unilaterally pursue a claim, retain counsel, and prosecute these appeals on behalf of the JV without the approval of the JV's Supervisory Board. Additionally, this Board requires any representative before it, such as an attorney, be a "duly authorized representative." *See Lessors of Abchakan Village, Logar Province, Afghanistan*, ASBCA No. 61787, 21-1 BCA ¶ 37,953 at 184,325 (quoting *Afghan Washington Constr. Co.*, ASBCA No. 60856, 18-1 BCA ¶ 37,009 at 180,242). Given that Mr. El Bassiouny was only authorized to commit the JV to retain outside counsel with the approval of the JV's Supervisory Board, appellant's counsel is not a duly authorized representative.

Appellant further argues against dismissal because it says doing so would allow the government to enjoy a windfall by retaining funds owed to the JV. The potential of a government windfall goes to the merits of this matter which we cannot consider if we lack jurisdiction to entertain it. The JV agreement's provisions barring either party

---

[4] Appellant presented this argument in the portion of its brief addressing Mr. El Bassiouny's alleged authority to certify a claim, but it seems that it could also be relevant to any power to submit a claim, retain counsel, and authorize the appeals, so we consider it here.

from making commitments without the consent of the other, the parties' declaration that a Supervisory Board member's actions must be approved by the Board, combined with the agreement's mandate that decisions of the Supervisory Board be unanimous, reflect an intent by both parties to ensure that any one of the board's members cannot hijack the organization. As much as Mr. El Bassiouny may believe in the validity of the claim and appeals he wishes to pursue here, CWI's partner, UK, has indicated it does not. Given all of this we have no discomfort scrutinizing Mr. El Bassiouny's authority to unilaterally act for the entire JV and finding it lacking. *See William Reisner Corp.*, ASBCA No. 39944, 90-3 BCA ¶ 23,144 (among other things dismissing an appeal for lack of jurisdiction when the record fails to reflect that the contractor has designated the person submitting the claim or taking the appeal as its authorized agent or representative to do so).

CONCLUSION

The appeals are dismissed for lack of jurisdiction

Dated: September 13, 2022

MARK A. MELNICK
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

RICHARD SHACKLEFORD
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

J. REID PROUTY
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA Nos. 63211, 63212, 63213, 63214, 63215, Appeal of Contrack Watts-Uejo Kogyo JV, rendered in conformance with the Board's Charter.

Dated:  September 14, 2022

PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals