# United States Court of Appeals for the Federal Circuit

---

**AVUE TECHNOLOGIES CORPORATION,**
*Appellant*

**v.**

**SECRETARY OF HEALTH AND HUMAN SERVICES, ADMINISTRATOR OF THE GENERAL SERVICES ADMINISTRATION,**
*Appellees*

---

2022-1784

---

Appeal from the Civilian Board of Contract Appeals in Nos. 6360, 6627, Administrative Judge Kyle E. Chadwick, Administrative Judge Kathleen J. O'Rourke, Administrative Judge Patricia J. Sheridan.

---

Decided:  March 6, 2024

---

MICHAEL BHARGAVA, Nichols Liu LLP, Washington, DC, argued for appellant.  Also represented by ANDY LIU, ROBERT NICHOLS, MADISON PLUMMER.

DANIEL B. VOLK, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for appellees.  Also represented by BRIAN M. BOYNTON, PATRICIA M. MCCARTHY, CORINNE ANNE NIOSI.

———————————

Before STOLL, CUNNINGHAM, and STARK, *Circuit Judges.*

STARK, *Circuit Judge.*

Avue Technologies Corporation ("Avue") appeals a decision by the Civilian Board of Contract Appeals ("Board"), which dismissed for lack of jurisdiction Avue's appeal of a claim under the Contract Disputes Act ("CDA"). Avue nonfrivolously alleged that it is party to a procurement contract with the Food and Drug Administration ("FDA") via incorporation of Avue's end-user licensing agreement ("EULA") into an FDA task order, which is governed by a Federal Supply Schedule ("FSS") contract between a thirdparty and the General Services Administration ("GSA"). Such an allegation is adequate to establish the Board's jurisdiction over Avue's CDA claim. Whether Avue actually is a "contractor" for purposes of pressing the CDA claim is a matter (among others) on which Avue will have to prevail on the merits. We vacate the Board's dismissal and remand with instructions that the Board provide Avue with an opportunity to prove its claim.

I

Avue develops software that it sells to private and government entities, allowing them to automate administrative tasks while complying with statutory, regulatory, and policy requirements. Avue does not sell licenses to its software directly to federal agencies. Instead, it sells annual subscriptions – to what it calls Avue Digital Services ("ADS") – through third party Carahsoft Technology Corporation ("Carahsoft"), an authorized reseller which is itself party to an FSS contract with GSA. Avue attempts to govern its relationship with end users of its software via an

EULA, which Avue calls a master subscription agreement ("MSA").[1]

In 2012, Carahsoft and GSA amended the FSS contract to which they were both parties to include reference to Avue's ADS. The form effectuating this modification provided, among other things, that the "GSA approved EULA rider [is] hereby incorporated into this contract." J.A. 2836. An attachment to the modification form included an unsigned, undated template version of Avue's MSA, containing the words "[CLIENT NAME]" on the title page. The attached version of the MSA states, just above the empty signature blocks, "in the event this agreement is incorporated into a governmental contract award, execution by the parties is not necessary." J.A. 3001 (capitalization altered). The MSA further states that, "[f]or federal government Subscribers, the Subscribed Services are commercial items under [48 C.F.R. §] 2.101 and this standard commercial license to the Subscribed Services shall be incorporated into and attached to the applicable contract." J.A. 2993.

In September 2015, the FDA placed a task order under the FSS contract for a subscription to Avue's ADS ("Task Order"). The Task Order was for one base year and four option years. Sometime in mid-September 2016, Avue learned through "an anonymous text message" that the FDA "did not intend to renew its Avue subscription," which

---

[1]    The parties use the terms "MSA" and "EULA" interchangeably. *See, e.g.*, Opening Br. at 8 n.1; Oral Arg. 1:58-2:05, *available at* https://oralarguments.cafc.uscourts.gov/default.aspx?fl=22-1784_10052023.mp3 (Avue counsel stating EULA and MSA are interchangeable terms). We do so here as well. Both terms refer to the "GSA approved EULA rider [that was] []incorporated into [the amended FSS] contract" in 2012. J.A. 2836.

was due to expire on September 29, 2016. J.A. 5789; *see also* J.A. 5288. Avue also "immediately conducted an analysis of the account activity and use of FDA account holders." *Id.* On September 18, 2016, Avue accused the FDA of taking "acts in violation of Avue's end user terms and conditions, intellectual property rights, and the Trade Secrets Act." *Id.* On September 29, 2016, when the FDA chose not to exercise its option, the Task Order terminated.

Over the ensuing months, Avue sent a "Cease and Desist Letter" and a claim letter to the FDA's contracting officer. J.A. 6040-41 (cease and desist letter); J.A. 6069-86 (claim letter). Then, in a series of communications back to Avue in 2017 and 2018, the contracting officer denied Avue's allegations, pointing out that the FDA's contract was with Carahsoft, not Avue. J.A. 6067-68 (FDA's response to cease and desist letter in October 2017); J.A. 6099 (FDA's response to claim letter in August 2018). The contracting officer also noted that "[i]f Avue wishes to pursue its 'claim,' it can do so by having Carahsoft assert a pass-through claim against the FDA on Avue's behalf." J.A. 6099.

On January 22, 2019, Avue filed an appeal at the Board of the contracting officer's denial of its claim.[2] Carahsoft

---

[2] The government argues that Avue's Board appeal was untimely under 41 U.S.C. § 7104. Section 7104 requires a party to file an appeal with the Board "within 90 days from the date of receipt of a contracting officer's decision under [41 U.S.C. §] 7103." The government concedes it did not raise this issue with the Board. In any event, the FDA's August 17, 2018 letter did not start the clock governing Avue's appeal since it failed to adequately "inform the contractor of the contractor's rights," 41 U.S.C. § 7103(e); *see also Pathman Constr. Co. v. United States*, 817 F.2d 1573, 1578 (Fed. Cir. 1987), and the letter did not

did not sponsor Avue's claim. Avue asserted to the Board that it was appealing from a "deemed denial" of its claim. The United States Department of Health and Human Services (HHS), of which the FDA is a part, moved to dismiss Avue's appeal for lack of subject matter jurisdiction, arguing that Avue is not a "contractor" within the meaning of the CDA. The Board denied the HHS motion. After Avue filed a "protective" claim with GSA, the Board consolidated the appeal of the GSA claim with the ongoing appeal of the HHS claim.

Following discovery, the agencies and Avue cross-moved for summary judgment. Before ruling on the parties' motions, the Board *sua sponte* ordered supplemental briefing addressing whether a software license is a procurement contract subject to the CDA. After receiving the supplemental briefs, the Board dismissed Avue's appeal for lack of jurisdiction. The Board's opinion stated that it was not deciding whether Avue's "MSA establishes privity of contract between Avue and the Government." J.A. 4-5. Rather, the Board was dismissing because it agreed with the government's view that "even if the Board were to find that the . . . MSA establishes an independent contract between the Government and Avue as Avue alleges, [the Board] lack[ed] jurisdiction to decide the case because the MSA is not a procurement contract within the meaning of the CDA." J.A. 4 (internal quotation marks omitted). In the Board's view, "the MSA standing alone lack[ed] core

---

indicate that it was the contracting officer's final decision, *see* J.A. 6099 (contracting officer stating "FDA will *continue to research* the allegations presented in Avue's 'claim'") (emphasis added); *see also* 48 C.F.R. § 33.211 (requiring contracting officer's written decision to include "paragraphs substantially as follows: 'This is the final decision of the Contracting Officer . . . .'").

aspects of a CDA procurement contract." J.A. 5. The Board did not evaluate whether the FSS contract or the Task Order, which incorporated the MSA, constituted a procurement contract.

Avue timely appealed the Board's dismissal. We have jurisdiction under 28 U.S.C. § 1295(a)(10). We review the Board's decision on questions of law de novo. *See* 41 U.S.C. § 7107(b). In particular, whether a tribunal "has jurisdiction over a claim presents a question of law we review de novo." *Lee's Ford Dock, Inc. v. Sec'y of the Army*, 865 F.3d 1361, 1369 (Fed. Cir. 2017).

II

The Board's jurisdiction over an appeal of a CDA claim is derived from 41 U.S.C. § 7105(e)(1)(B), which confers "jurisdiction to decide any appeal from a decision of a contracting officer . . . relative to a contract made by that agency." Under 41 U.S.C. § 7103(a)(1) & (2), the contracting officer's decision that gives rise to a Board appeal must be with respect to a claim by a "contractor." The term "contractor" is expressly defined in 41 U.S.C. § 7101(7) as "a party to a Federal Government contract other than the Federal Government." Accordingly, "the CDA does not permit appeals by anyone who is not a party to a Government contract." *Winter v. FloorPro, Inc.*, 570 F.3d 1367, 1371 (Fed. Cir. 2009) (internal quotation marks omitted); *see also id.* at 1370 ("[T]he provisions of the CDA apply only to 'contractors,' i.e., 'part[ies] to a Government contract other than the Government.'") (quoting 41 U.S.C. § 601(4)).

In some circumstances, however, we have held that certain third parties that are in privity with the federal government may "become a 'contractor' within the meaning of the CDA" and, hence, press a claim under the CDA. *Lumbermens Mut. Cas. Co. v. United States*, 654 F.3d 1305, 1321 (Fed. Cir. 2011); *see also Admiralty Constr. By Nat'l Am. Ins. Co. v. Dalton*, 156 F.3d 1217, 1222 (Fed. Cir. 1998)

("Because National is neither a contractor nor an entity in privity with the Navy, National alone is not eligible to appeal to the Board under the CDA."); *Erickson Air Crane Co. of Washington, Inc. v. United States*, 731 F.2d 810, 813 (Fed. Circ. 1984) ("The government consents to be sued only by those with whom it has privity of contract . . . .").

"[A] plaintiff need only *allege*" – that is, it need not prove – "the existence of a contract" to which it is a party "to establish the Board's jurisdiction under the CDA 'relative to' an express or implied contract with an executive agency." *Engage Learning, Inc. v. Salazar*, 660 F.3d 1346, 1353 (Fed. Cir. 2011) (emphasis added). Notwithstanding our clear holding in *Engage Learning*, the government argues that if a "motion denies or controverts the pleader's allegations of jurisdiction . . . , the movant is deemed to be challenging the factual basis for the court's subject matter jurisdiction," and at that point "[a]llegations alone will not suffice." Gov. Br. at 29 (citing *Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1583 (Fed. Cir. 1993)). According to the government, then, establishing the Board's jurisdiction requires that "Avue must convince this [c]ourt that there is a genuine issue of material fact for trial as to that issue," i.e., that the record contains sufficient evidence from which a reasonable factfinder could find that Avue is party to a contract with the federal government. Gov. Br. at 31.

The government's position is contrary to our precedent. In *Engage Learning*, we held that "the determination of whether or not a contract in fact exists is *not* jurisdictional; it is a decision on the merits." 660 F.3d at 1355 (emphasis added). It follows, then, that to establish the Board's jurisdiction over a CDA claim, a party need only *allege*, non-frivolously, that it has a contract (express or implied) with

the federal government.[3]  The obligation to actually *prove* the existence of such a contract does not arise until the case proceeds to the merits, at which point the claimant can only prevail on its claim if it proves (among other things) that it has rights under a "procurement contract."[4]

None of the cases on which the government relies for its contention that a claimant, in order to establish the Board's jurisdiction, must produce sufficient evidence of a contract to at least create a genuine dispute of fact, *see* Govt. Br. at 29, actually involves a CDA claim or the Board. *See McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189 (1936) (discussing diversity jurisdiction in district court); *Cedars-Sinai*, 11 F.3d at 1583 (applying Federal Rule of Civil Procedure 12(b)(1) in district court action); *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 747 (Fed. Cir. 1988) (same).  In contrast, *Engage Learning* is directly on point, as it involved a CDA claim before the Board – and, again, *Engage Learning* expressly

---

[3]    That is, the party must allege, in substance, that there was "a mutual intent to contract including an offer, an acceptance, and consideration" and that "the Government representative who entered or ratified the agreement had actual authority to bind the United States." *Trauma Serv. Grp. v. United States*, 104 F.3d 1321, 1325 (Fed. Cir. 1997).

[4]    The government correctly notes that "the same question may resolve both the merits and a jurisdictional issue." Gov. Br. at 30 (citing *Brownback v. King*, 141 S. Ct. 740, 749 (2021)).  Such potential overlap, however, does not make it any less important to distinguish between jurisdiction, which need only be alleged (to survive a motion to dismiss), and the merits, which must be proven.

held that nonfrivolous allegations are adequate to establish jurisdiction and avoid dismissal.

Avue has made the requisite non-frivolous allegations to establish the Board's jurisdiction. Indeed, this was the conclusion the Board itself reached early in the case when it denied the initial motions to dismiss. *See* J.A. 198 (Board: "Avue is not pursuing its claim as a subcontractor. Avue alleges that it is a contractor. More than this, Avue points to a specific writing (the EULA, allegedly 'incorporated' in the FSS contract) that it considers a government contract."). At that stage, the Board correctly explained that Avue's "allegations of the existence of a contract suffice to take the claim out of the realm of subcontractor claims and into the world of claims within our CDA jurisdiction." J.A. 198 (citing *Engage Learning*, 660 F.3d at 1353 and *Gould, Inc. v. United States*, 67 F.3d 925, 929 (Fed. Cir. 1995)).

After the parties filed their motions for summary judgment and supplemental briefs, however, the Board found it lacked jurisdiction, for a new reason. At that point, the Board held that the MSA, standing alone, is not a "procurement contract" within the meaning of the CDA. J.A. 4. Central to the Board's rationale was that "the Government did not acquire anything directly from Avue under a procurement contract with Avue." J.A. 6.

Whether or not the MSA, all by itself, is a "procurement contract" is not a question we need to decide. The pertinent question, instead, is whether Carahsoft's FSS contract with GSA or the Task Order placed by the FDA, each of which incorporates the MSA, constitutes a "procurement contract" giving rise to rights enforceable by Avue. *See* Opening Br. at 28 ("The Board's fundamental error was to improperly disaggregate the Carahsoft Schedule Contract from its incorporated parts . . . ."). While Avue, confusingly, urged the Board to treat the MSA as a standalone

contract, *see* J.A. 170-71 ("MSA [i]s a [f]reestanding [c]ontract [b]etween Avue and FDA."); *see also* J.A. 4 ("[E]ven if the Board were to find that the . . . MSA establishes an independent contract between the Government and Avue, *as Avue alleges* . . . .") (emphasis added), Avue also sufficiently, and alternatively, made the more comprehensive allegation that its rights arise from the *combination* of the MSA with the FSS contract or with the Task Order, *see* J.A. 737 ("[T]here is no question that the MSA is incorporated by reference into FDA's FSS order, and so, whether or not it is a CDA contract standing alone, CDA jurisdiction attaches to a claim based on its breach."). The government agrees that Avue made this broader allegation to the Board, *see* Oral Arg. at 14:44-15:09 (government acknowledging that "[b]oth arguments will probably show up in [Avue's] briefs including from below") and that "the MSA was not a stand-alone contract," Gov. Br. at 51.

Importantly, the government further concedes that if, as we are requiring on remand, the MSA is to be considered part of a larger contract (i.e., in conjunction with the FSS contract or the Task Order), that larger contract *is* a procurement contract. *See* Gov. Br. at 52 ("Unquestionably, Carahsoft's contracts with GSA and the FDA were procurement contracts."); Oral Arg. at 24:19-34 (government counsel stating "[i]t is not a question of whether there is or isn't a procurement contract. There was. It was with Carahsoft.").

Under these circumstances, in which the Board found it lacked jurisdiction without considering a basis for jurisdiction that all parties to this appeal agree was fairly presented to the Board, we will not affirm the Board's dismissal of Avue's claim. Instead, we conclude that Avue's allegation that it is a party to a procurement contract (i.e., the FSS contract or the Task Order) with the federal government that incorporates its MSA is nonfrivolous and, therefore, sufficient to establish the Board's jurisdiction

under the *Engage Learning* standard, which we reaffirm is applicable here.

On remand, the Board must proceed to consider the merits, treating as a merits issue the matter of whether Avue is a party to – or otherwise has enforceable rights pursuant to, for example by being in privity with Carahsoft – the conceded procurement contract (i.e., the MSA plus the FSS or the Task Order). We decline the parties' invitation, *see e.g.,* Opening Br. at 50; Oral Arg. at 17:53-18:32, to resolve merits issues (including privity) ourselves in the first instance. Instead, we will benefit from the Board's considerable "expertise on questions of government contracts" and its considered views on these issues. *R.B. Wright Constr. Co. Through Rembrant v. United States*, 919 F.2d 1569, 1571 (Fed. Cir. 1990).

## III

We have considered the government's remaining arguments and find they are unpersuasive and do not warrant further discussion. Thus, for the reasons stated above, we vacate the Board's dismissal for lack of jurisdiction and remand for further proceedings on the merits consistent with this opinion.

### VACATED AND REMANDED

COSTS

No costs