ARMED SERVICES BOARD OF CONTRACT APPEALS

Appeal of -                                            )
                                                       )
Racer Machinery International                          )       ASBCA No. 64165
                                                       )
Under Contract No. SPE4A8-22-P-0017                    )

APPEARANCE FOR THE APPELLANT:          Mr. Alex Vojinovich
                                          Chief Operating Officer
                                          Cambridge, Ontario

APPEARANCES FOR THE GOVERNMENT:        Gary P. Bilski, Esq.
                                          DLA Chief Trial Attorney
                                        Sarah R. Clarson, Esq.
                                          Trial Attorney
                                          DLA Aviation
                                          Richmond, VA


OPINION BY ADMINISTRATIVE JUDGE MELNICK DISMISSING APPELLANT
RACER MACHINERY INTERNATIONAL AS THE APPELLANT AND
SUBSTITUTING THE CANADIAN COMMERCIAL CORPORATION AS
APPELLANT

        The Canadian Commercial Corporation (CCC) is a Crown Corporation of the
Canadian Government that contracts with agencies of the United States Department of
Defense (DOD) and then enters subcontracts with Canadian entities, as contemplated
by a letter agreement between the United States and Canada (Bd. corr. ltr. dtd. July 10,
2025 attach. (Domestic Contract-Racer)). *See Canadian Commercial Corp.*, ASBCA
No. 47888, 97-2 BCA ¶ 29,133 at 144,945; *see also* DFARS 225.870,
CONTRACTING WITH CANADIAN CONTRACTORS;
https://www.acq.osd.mil/asda/dpc/cp/ic/reciprocal-procurement-mou.html.

        On November 9, 2021, a component of the Defense Logistics Agency awarded
a firm fixed-price contract to CCC for a five axis CNC horizontal machining center
(R4, tab 7). Consistent with the arrangement between the United States and Canada,
the contract stated that CCC would subcontract 100% of the work to Racer Machinery
International (Racer), which was also identified as the equipment vendor (*id.* at 3-4).
CCC has represented to the Board that it flowed through its obligation to Racer
through a "Domestic Contract" that it provided (Bd. corr. ltr. dtd. July 10, 2025).

Evidently, issues arose respecting performance.  On October 22, 2024, the contracting officer sent a show cause letter addressed to both Racer and CCC alleging that Racer, not CCC, had failed to deliver a complying product by the contract completion date and that the government was considering termination for default.  It requested a response containing any facts demonstrating the failure to perform was "due to causes beyond your control and without fault or negligence on your part." (R4, tab 68)

After Racer responded, on February 21, 2025, the contracting officer sent another letter addressed to both Racer and CCC stating it had confirmed that Racer and CCC were not in compliance with the contract and therefore the contract was terminated for default under FAR 52.212-4 for failure to perform in accordance with terms and conditions.[1]  The letter stated that "you have the right [to] appeal," and that "[y]ou may appeal" to this Board, stating further "[i]f you decide to make such an appeal, you must" provide notice to the Board within 90 days of receiving this decision or any other notice of this termination for default.  (R4. tab 74)

On May 15, 2025, Racer acting through its Chief Operating Officer, submitted a notice of appeal to this Board, seeking to convert the default termination to a termination for convenience.  The government moves to dismiss the appeal for lack of jurisdiction, arguing that because Racer is only a subcontractor it lacks privity of contract with the government and cannot appeal on its own to the Board.  On July 10, 2025, during the briefing of Racer's motion, CCC's counsel submitted its own letter to the Board.  It stated that it intended to support Racer's appeal.  It discussed its status as a Crown Corporation that acts as a conduit for DOD purchases from Canadian suppliers.  It stressed that direct communication had taken place between DLA and Racer, including the show cause letter and notice of default, which had identified Racer as having failed to deliver under the contract.  It explained that these direct communications had led it to believe that Racer was a proper party to appeal.  Nevertheless, it represented that it was willing to adopt and proceed with the appeal.  It attached its own complaint, requesting that it be filed if needed.  The complaint is also signed by CCC counsel and seeks the Board to overturn the termination for default.  (Bd. corr. ltr. dtd. July 10, 2025)  We deem CCC's letter as its own notice of appeal.

Notwithstanding the government's careless indications in both the show cause and termination letters that Racer was contractually obligated to the government, as a

---

[1] The letter says FAR 5.212-4.  That is likely a typographical error.  This contract refers to FAR 52.212-4, CONTRACT TERMS AND CONDITIONS-COMMERCIAL ITEMS (OCT 2018).  The portion of that clause concerning terminations for failure to comply with contract terms and conditions is titled "Termination for Cause."  FAR 52.212-4(m).

matter of law Racer was not. Only CCC was in privity of contract with the government under the prime contract, with Racer only serving as a subcontractor to CCC. Thus, we are compelled to agree with the government that Racer cannot bring this appeal. Under chapter 71 of title 41 of the United States Code, only a contractor may appeal to this Board. 41 U.S.C. § 7104(a). A contractor is limited to a party to a government contract other than the government. 41 U.S.C. § 7101(7). Subcontractors are generally not in privity of contract with the government and therefore appeals by them are normally not within our grant of jurisdiction. *Winter v. FloorPro, Inc.*, 570 F.3d 1367, 1370-73 (Fed. Cir. 2009).[2] Accordingly, Racer is dismissed as the appellant for lack of jurisdiction.

Nevertheless, as we have found, CCC has now noticed its own appeal and filed a complaint. The government's reply contends that CCC's effort is time barred because its July 10, 2025, filing was not submitted within 90 days from receipt of the contracting officer's February 21, 2025, final decision, normally a jurisdictional condition required by 41 U.S.C. § 7104(a). *See Cosmic Constr. Co. v. United States*, 697 F.2d 1389 (Fed. Cir. 1982). CCC does not contend that its letter was submitted within that period. We reject the government's contention that CCC's appeal is time barred.

Section 7103(e) of title 41 requires the contracting officer's decision to inform the contractor of its "rights as provided in this chapter," which is chapter 71. It requires "the Government provide the contractor sufficient information concerning [its] rights to make an informed choice as to whether, and in what forum, [it] will pursue an appeal" with the "focus" being "the protection of the contractor." *Decker & Co. v. West*, 76 F.3d 1573, 1579 (Fed. Cir. 1996). "A contracting officer's final decision that does not give the contractor adequate notice of its appeal rights is defective and therefore does not trigger the running of the limitations period." *Id.* at 1580 (quoting *Pathman Constr. Co. v. United States*, 817 F.2d 1573, 1578 (Fed. Cir. 1987)); *see also Mansoor Int'l Dev. Servs.*, ASBCA No. 58423, 14-1 BCA ¶ 35,742 at 174,926-27.

At least as early as the show cause letter, the government behaved as if the legal obligations of Racer and CCC toward it were intertwined. That letter was addressed to both CCC and Racer and suggested that Racer, not CCC, had failed to successfully deliver on the contract. The subsequent contracting officer's final decision terminating the contract for default was also addressed to both CCC and Racer and stated that both Racer and CCC had failed to perform the contract. Given that the decision was directed toward both entities, and that both were declared in default, its notice of

---

[2] There may be an exception when the prime contractor is acting as the government's agent when executing the subcontract. *FloorPro,* 570 F.3d at 1371 n.3. Neither Racer nor CCC claim that CCC was the government's agent.

appeal rights, stating that "you may appeal" to this Board and "you" must do so within 90 days can reasonably be read to instruct CCC that Racer, as a defaulting party and the entity performing 100% of the contract work, could appeal the termination instead of CCC. Considering the decision in its totality, it constitutes an erroneous and misleading notification of the rights provided by chapter 71, which, as we have already observed, only afford the contractor, CCC, the right to appeal. Focusing on the protection of CCC, the decision's deceptive content does not provide CCC with accurate information to make an informed choice as to whether it will pursue an appeal.

It is not enough that the government's notice of appeal rights was inadequate for CCC to escape the 90-day time limit to appeal. CCC must demonstrate that the insufficient notice actually prejudiced its ability to prosecute a timely appeal, or it detrimentally relied upon the flawed information, before the limitation period can be held not to have begun. *Decker*, 76 F.3d at 1580; *Mansoor*, 14-1 BCA ¶ 35,742 at 174,926-27. CCC's July 10, 2025, letter makes a compelling case for detrimental reliance, noting as it does that the government's direction of the default notice to Racer and communications with it caused CCC to believe that Racer can pursue the appeal. The government's reply did not challenge that assertion or suggest that further proceedings were needed to address it.[3] Given this demonstration, we find the government's erroneous notification of appeal rights was not harmless. *See Fla., Dep't of Ins. v. United States*, 81 F.3d 1093, 1098 (Fed. Cir. 1996) (observing that harm must accompany a defective notification of appeal rights in a termination notice for relief to be granted). Accordingly, we hold the 90-day limitation period for CCC to appeal was never triggered.

---

[3] The government did not question the competency of counsel or the adequacy of his letter to provide this information. Although the Board has held that mere argument by counsel is not evidence of prejudice, *Mansoor*, 14-1 BCA ¶ 35,742 at 174,926-27, the prompt timing of this communication by corporate counsel describing CCC's status and role as a nominal contracting partner, the nature of its actions, and the conclusions it drew from the default notice, is evidence in and of itself that CCC was prepared to pursue this appeal but held off because of the deficient notice. The letter is more aptly characterized as an assertion of fact on behalf of the corporation than simply advocacy by counsel. Moreover, the government's sole argument against our consideration of the letter was its complaint that counsel did not file a formal notice of appearance, which we find unpersuasive. In any event, that requirement can be rectified as the appeal proceeds.

<u>CONCLUSION</u>

Racer is dismissed as the appellant for lack of jurisdiction. The Canadian Commercial Corporation is substituted as the appellant and the Recorder's Office is directed to substitute it for Racer on this appeal's caption.

Dated: February 27, 2026

MARK A. MELNICK
Administrative Judge
Armed Services Board
of Contract Appeals

I <u>concur</u>

OWEN C. WILSON
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I <u>concur</u>

J. REID PROUTY
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 64165, Appeal of Racer Machinery International, rendered in conformance with the Board's Charter.

Dated: February 27, 2026

PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals